## ESTATE OF P. L. MANNERBACK, DECEASED.

APPEAL BY THE READING TRUST CO., GUARDIAN, FROM THE ORPHANS' COURT OF BERKS COUNTY.

Argued March 4, 1890—Decided March 17, 1890.
[To be reported.]

(a) By his will, a testator gave to his son Samuel the one fourth part of the residue of his estate, real, personal and mixed, with a provision that Samuel should receive the interest only on said share during life, and at his death his children should take absolutely and without restriction "the share so limited to their parent during his natural life."

(b) The will provided, further, that should Samuel, who was at its date in his minority, die "before attaining the age of twenty-one years, without leaving issue living at the time of his death," then the share or interest, which would otherwise vest in him or his children, should vest in and be divided among the testator's children and their children.

(c) A trustee was appointed, by the will, to invest the fund and pay the interest to Samuel during his life, with a provision that the interest should not be liable for Samuel's debts, or transferable by way of anticipation, and that nothing but Samuel's receipt should be a sufficient discharge to the trustee. Samuel died after majority, leaving creditors, a widow, and a minor child:

1. The rule in Shelley's Case was inapplicable, because, the trust being active, the life-estate given to Samuel was an equitable one merely, and the remainder was a legal estate; moreover, the word "children," ordinarily a word of purchase and not of limitation, was such in this will, and the word "issue," in the limitation over on Samuel's death in his minority, was used in the sense of children.*

2. Wherefore, neither the creditors nor the widow of Samuel had any claim upon the fund held in trust for him during his life, the award of any part of it to either of them was contrary to the general intent of the testator and the express terms of the bequest, and his surviving child was entitled to the principal of the fund, taking under the will and not as heir.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 205 January Term 1890, Sup. Ct.; court below, number and term not given.

On April 1, 1889, the account of James R. Griesemer and David R. Griesemer, administrators of Henry D. Griesemer, deceased, who was trustee of Samuel L. Mannerback, under the will of Prisca L. Mannerback, deceased, exhibiting a balance of $7,725.20 in the hands of the accountants, came up for audit. The cestui que trust, Samuel L. Mannerback, had died on March 27, 1889, leaving to survive him a lunatic wife, Mary Mannerback, and a minor child, Harry Mannerback, of whom the Reading Trust Company was guardian.

A number of creditors of Samuel L. Mannerback presented claims as such against the fund before the court, but the guardian of Harry Mannerback claimed the whole of it less costs, under the will of Prisca L. Mannerback, which was dated August 16, 1870, and admitted to probate on January 2, 1871, and the material parts of which are as follows:

"1. I give and bequeath to my son, Samuel, the sum of nine hundred dollars to be deducted for him before any division of

---

* Cf. Harbster's Estate, post, 351.

my estate and to be paid to him when he attains the age of twenty-one years; an equal amount having been by me heretofore given to my older children.

" 2. As to the rest and residue of the property and estate which I shall own at the time of my death, whether the same be real, personal or mixed, including the sum of seven thousand dollars charged upon property sold by me to Joseph Mishler, I order and direct that the same be divided into four equal shares, which I give, devise, bequeath, limit and restrict as follows:

" 3. I give, devise and bequeath one of each of said four shares to my several children, George, Rosa, wife of John R. Gift, and Samuel, but each of my said children shall receive the interest only of his or her respective share during his or her natural life, and upon the death of each of my said children, then the children of such deceased child shall take absolutely and without restriction, in equal shares, the share so limited to their parent during his or her natural life."

" 5. I do hereby make, constitute and appoint George D. Stitzel of the city of Reading, trustee of each and all of the several shares herein devised and bequeathed in the manner and limited as above mentioned, to my said several children, George, Rosa, wife of John R. Gift, and Samuel, and the interest whereof is to be paid to each of my children, George, Rosa and Samuel, during his or her natural life, hereby giving to the said George D. Stitzel full power to receive, collect, hold and invest, as he may deem most advantageous, the said shares and each of them, for the trust and for the purposes above directed and appointed."

" 7. If either of my grandchildren shall have died before his or her parent leaving issue living at the time of the death of such grandchild, then such issue shall be entitled to the share which such grandchild would have received had he or she survived said parent.

" 8. I further order and direct that the interest to be paid by the said trustee to each of my said children, George, Rosa and Samuel, during his or her natural life, shall in no way be subject, responsible, or liable to or for the existing or future contracts, debts or engagements of either of my said children; nor shall said interest be liable to attachment for any debt of either of my said children; nor shall the same be assigned or trans-

Adjudication.

ferred by either of my said children by way of anticipation, but said interest shall be paid by said trustee to each of my said children semi-annually, and the receipt or other acknowledgment of such child for said interest, when so paid, shall be the sufficient and only discharge of said trustee for such payment.

" 9. And whereas, one of my children, to wit: Samuel, is at this time under the age of twenty-one years, I order and direct that should he die before attaining the age of twenty-one years, without leaving issue living at the time of his death, or should my son George, or my daughter Rosa, die without leaving issue living at the time of his or her death, then the share and interest in my estate, which would otherwise vest in the said George, Rosa and Samuel respectively, and their children, as hereinbefore limited, shall vest in and be equally divided among the surviving brothers and sisters of such deceased child except my son William, but the children of said William shall together take a share in the same, equal to that which each of my surviving children will receive; but I order and direct that the share which each of such surviving children may take, shall be but a life-interest to and for such surviving child, and such share shall be subject to the limitation hereinbefore directed and provided with regard to the shares and interest in my estate, directly devised and bequeathed for the use of each of my said three children during their respective lives, and to their children after them, as herein limited.

" 12. I constitute and appoint the said George D. Stitzel guardian of my minor child Samuel.

" 13. I constitute and appoint Joseph Mishler, of the city of Reading, executor of this my last will and testament, hereby giving to him full power to sell either at public or private sale, as he may deem best, any real estate that I may own at the time of my decease, and to make title for the same to the purchaser in fee-simple."

Sometime after the probate of the will, Henry D. Griesemer was duly appointed trustee thereunder, in the place of George D. Stitzel.

The adjudication was as follows, SCHWARTZ, P. J.:

There is a contention between the creditors of the decedent and the guardian of the minor son, Harry Mannerback, respect-

Adjudication.

ing the distribution of this fund.   The former contend that the decedent had an absolute estate in it; and the latter that it was but for life, with the remainder over to his children.

The fund was realized under the decedent's father's will. The question for solution is, did the father bequeath him an absolute or a life-estate?   The same must be gathered from the former's entire will.

The first clause of the father's will bequeathed to his son, Samuel, the decedent, the sum of nine hundred dollars.   The second clause directs the residue of his estate to be divided into four equal shares.   The third clause gives one of said shares to each of three of his children, viz: George W., Rosa R. and Samuel L., which, so far as this account is concerned, consists of personalty, " each to receive the interest only of his or her share respectively during his or her natural life, and upon the death of each of the said children, then the children of such deceased child shall take absolutely and without restriction, in equal shares, the share so limited to their parent during his or her natural life."   The ninth clause, referring to the share of Samuel, the interest in controversy here, provides that in the event of Samuel dying " before attaining the age of twenty-one years without leaving issue living at the time of his death, his share shall vest and be equally divided among the testator's other children."

The general question is, does Samuel take his share absolutely or merely the interest for life ?   And this again depends upon whether those who are to take after Samuel, viz. : his off-spring, shall take through him, or as direct objects of testator's bounty.   If the gift in Samuel is absolute, under the rule in Shelley's Case, the trust does not prevent its immediate vesting. It is difficult to determine whether the testator used the word " children " in the sense of " issue," or in its natural and legal acceptation.   The testator seems to use the words children and issue indiscriminately through his entire will.   In the ninth clause, however, when the testator comes to limit the extent of Samuel's interest, and the contingency upon which that interest is to go to his other children, he says that should he (Samuel), die before attaining the age of twenty-one years without leaving issue living at his death, then the share, which would otherwise vest in Samuel's children, shall be equally divided among

his surviving brothers and sisters. Here the word "issue" is undoubtedly used in its technical sense, and was intended not only to embrace children, but the issue of the deceased children, if living at Samuel's death. In other words, any issue living at Samuel's death should take under this gift.

From the other parts of the will, it also appears to have been the intention of the testator to limit and bequeath his entire estate to his lineal descendants ad infinitum. In Yarnall's App., 70 Pa. 335, and Haldeman v. Haldeman, 40 Pa. 29, the doctrine is established that when the testator intends the estate to go to the whole body of persons constituting in law the entire descent lineal, he means "issue, or heirs of the body," and this under the act of April 27, 1855, P. L. 368, is enlarged into an absolute estate. Distribution will have to be made accordingly.

—Accordingly, after directing payment of the costs and of the claims of creditors of Samuel L. Mannerback, deceased, the auditing judge awarded the one third of the residue of the fund to a trustee for Mary Mannerback, and the other two thirds to the guardian of Harry Mannerback. Exceptions to the adjudication having been dismissed and the adjudication confirmed, the Reading Trust Company, guardian of Harry Mannerback, took this appeal, specifying that the court erred:

4. In not distributing the entire balance of the fund, after deducting costs, to the appellant, as guardian of Harry Mannerback.

*Mr. Isaac Hiester* (with him *Mr. W. D. Horning*), for the appellant:

1. The trust in this case was an active one, because the trustee had active duties to perform, viz.: (*a*) to invest the trust fund; (*b*) to preserve it for the remaindermen; and (*c*) to preserve it from the creditors of the life-tenant as a spendthrift trust: Rife v. Geyer, 59 Pa. 393; Bacon's App., 57 Pa. 504. The trust terminated on Samuel's death and vested in his children absolutely as a legal estate. The life estate being equitable and the estate in remainder legal, the rule in Shelley's Case does not apply: Preston on Estates, 382; Fearne on Remainders, 56; Smith on Executory Interests, § 470; Bacon's App., 57 Pa. 504; Little v. Wilcox, 119 Pa. 440; Carson v. Fuhs, 131 Pa. 256; Rife v. Geyer, 59 Pa. 393.

The cases cited by the court below, Haldeman v. Haldeman, 40 Pa. 29, and Yarnall's App., 70 Pa. 335, are not applicable, because the trusts in favor of the life-tenants therein were dry trusts. The decree of the court renders all the testator's precautions to protect against creditors useless.

2. Even if the life-estate and the estate in remainder were both legal, this will would not vest in Samuel an estate-tail, because the failure of issue is not indefinite, but is a failure which must take place, if at all, at Samuel's death, and in such case the first taker has a life-estate: Eichelberger v. Barnitz, 9 W. 447; Nicholson v. Bettle, 57 Pa. 384; Lantz v. Trusler, 37 Pa. 482. The clear meaning of this will is, that after the death of Samuel, his children should become the owners of his share as purchasers. Although the word "children" may be used in the sense of heirs of the body, there must be an express warrant for such a construction, going beyond conjecture or even equilibrium of apparent intention: Guthrie's App., 37 Pa. 9. Moreover, the word "issue" has a different meaning as to personalty from that which it has in devises of realty, and Samuel's share being personalty, the remaindermen take as purchasers: Sheets' Est., 52 Pa. 257; Myers's App., 49 Pa. 111.

*Mr. G. B. Stevens* (with him *Mr. J. H. Marx*), for the appellees:

1. This trust cannot be sustained as a spendthrift trust, as Samuel was a toddling infant when the will was written and admitted to probate, and there was nothing to justify the creation of such a trust for his benefit. Assuming that every trust must have some good reason or object to support it, this trust became executed by reason of the fact that Samuel did not "die before attaining the age of twenty-one years without leaving issue," and on attaining his majority Samuel was entitled to his estate in possession: Ogden's App., 70 Pa. 501; Yarnall's App., 70 Pa. 335; Lewin on Trusts, 209. That he did not then claim it, is no reason why we should not now do so for him: Silknitter's App., 45 Pa. 365.

2. If, therefore, this is not a spendthrift trust and the gift is to the cestui que trust for life, with remainder to his issue, the law casts on Samuel an absolute estate, which is charge-

able with his debts : Price v. Taylor, 28 P_{ɪ}. 95 ; Dodson v. Ball, 60 Pa. 492; Yarnall's App., 70 Pa. 335. The devise over utterly failed, and there is no further attempt in the will to restrict or limit the devise to Samuel, so as to make his share descend in any other manner than by the intestate laws. The only restriction is upon the enjoyment, not upon the quantity of the estate. The estate passed out of the testator and did not vest in the trustee; the only person in whom it could vest was Samuel, who took an estate-tail, enlarged to a fee : Wild's Case, 6 Rep. 17. It is argued that this fund is wholly personal, and a different rule of construction prevails. But there was no direction to the executor to convert real estate, and we must look at the fund as it was at the testator's death.

OPINION, MR. JUSTICE WILLIAMS :

This case depends on the construction of the will of Prisca Levan Mannerback. The testator, after certain specific bequests, directed that the residue of his property, real, personal, and mixed, should be divided into four equal parts, that being the number of his children. He gave one part each to Samuel, George, and Rosa, and the other part to the children of William, with the direction that " each of my said children shall receive the interest only of his or her respective share during his or her natural life, and, upon the death of each of my said children, then the children of such deceased child shall take absolutely and without restriction, in equal shares, the share so limited to their parent during his or her natural life." The testator then appoints George D. Stitzel trustee for all his children, and gives him full power to " receive, collect, hold, and invest as he may deem most advantageous," the entire fund, with direction to pay the interest on one fourth of it to each of his children during life. He expressly provides that the interest so to be paid by the trustee shall not be liable for the debts of his children, nor liable to seizure or attachment, nor capable of assignment or transfer by way of anticipation, and that nothing but the receipt of the child entitled to the interest shall be a discharge to the trustee from his liability to pay. The persons to whom the estate was to pass from the trustee on the death of the children of the testator are described in item third of the will as " the children of my children." In the seventh

item they are described as "my grandchildren." The purpose
of the testator to be gathered from these provisions, and from
the whole will, was to give his estate absolutely to his grandchil-
dren on the decease of his own children, and meantime to se-
cure the payment of the annual income in· equal parts to his
children during their lives. To secure this result, he created
a trust imposing the duty of the management of his estate and
the collection and payment of the income on the trustee. Upon
the death of one of his children leaving children or issue sur-
viving, one fourth of the estate was to be paid over to such
children absolutely, until, upon the death of the last one, the
payment of the last share to the children of such child of the
testator would execute the trust, and leave the trustee with no
further duties to perform.

It would be difficult to imagine a clearer case of an active
trust than that created by this will. Samuel Mannerback, one
of the four children of the testator, died some time after com-
ing of age, leaving a widow and one child to survive him. The
question·raised is over the disposition of the one fourth of the
estate on which he received the income during his life from
the trustee. This depends, as the learned judge of.the court
below well said, on the answer to the question, " Does Samuel
take his share absolutely, or merely the interest for life ? "
The trust company is the guardian of his child, and claims the
fund for its ward, while the creditors of Samuel and his widow
were allowed by the court to come in on the fund, on the theory
that Samuel was the absolute owner of one fourth of the estate
of the testator. This is contrary to the general scheme or pur-
pose of the testator, which was to give his estate absolutely to
his grandchildren. It is opposed to the express terms of the
bequest, which provided that "each of my said children shall
receive the interest only," and this for the natural life of each.
It subjects the principal to the debts of Samuel, although the
testator had directed that it should go to Samuel's children,
and had declared that the interest should not be liable for the
debts of Samuel, should not be subject to attachment, nor cap-
able of transfer. It overlooks the fact that Samuel had an
equitable interest only, and that the legal title was in the
trustee for the purpose of enabling him to discharge the duty
that the will imposed upon him, to pay over on the death of

each of testator's children, to the children whom he or she should leave surviving, the share of the testator's estate on which the deceased parent had been entitled to the interest or income.   The rule in Shelley's Case is not applicable, because the life-estate is an equitable one, and the remainder is a legal estate in fee-simple : Rife v. Geyer, 59 Pa. 393 ; Myers's App., 49 Pa. 111.   Moreover, the word "children," so constantly used by the testator, is ordinarily a word of purchase : Guthrie's App., 37 Pa. 9.   The word "issue" used in the ninth item of the will, is used in the same sense as the word "children," and has no effect on our question.   In Sheets' Est., 52 Pa. 257, it was distinctly held that, both as to personalty and realty, when an absolute interest is given in remainder, after a life-estate, to the children of the first taker, a limitation over on default of issue does not raise an estate-tail by implication.   "Issue" means such issue; that is, children.   But it is enough that the children of Prisca Levan Mannerback had but an equitable interest in the estate of their father, the legal title to which was limited to their children, the grandchildren of the testator, who took from him, and not as heirs at law of his children.

> The judgment is therefore reversed, and the fund awarded to the appellant, the guardian of the child of Samuel Mannerback.