## ·Evans's Estate. Evans's Appeal.

*Will—Vested and contingent legacies.*

Testator bequeathed a sum of money to a trustee for the use of his son for life, not to be subject to his debts or contracts, "and after the decease of the said son the said trustee shall pay over the balance remaining (if any) to the heirs at law of said son." *Held,* that, as the gift was personalty, no legal significance attached to the word "heirs" and that testator intended the word to denote the children of his son, and that the children accordingly took a vested interest in the legacy under the will.

*Costs—Audit.*

Where attaching creditors claim the shares of certain legatees on the ground that they are vested and not contingent, and an auditor appointed to report on this question finds that they are vested, the costs of the audit should be deducted from the shares in dispute.

Argued May 17, 1893. Appeal, No. 152, Jan. T., 1893, by Walter G. Evans, from decree of O. C. Lancaster Co., dismissing exceptions to auditor's report, in estate of James Evans, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Exceptions to auditor's report distributing trustee's account. The auditor, H. C. Brubaker, Esq., reported as follows:

"William W. Evans,. deceased, was a nephew and legatee of the will of James Evans, deceased. The legacy, of which the fund for distribution is a part, was given to him under clause 9 of will, dated December 30, 1861, and proved October 17, 1864, by the register of wills of Lancaster county, which reads as follows:

"'I give and bequeath to my nephew Robert A. Evans, the sum of five thousand dollars in trust, for the use and benefit of my nephew William W. Evans, for whom I hereby appoint the said Robert A. trustee, as follows: That is to say, the said Robert A. Evans shall invest the said sum of money at interest on mortgage or good security, and shall pay out from time to time the interest as it shall be got in and received, and also such part of the principal to the said William W. Evans, during his natural life, as the said Robert shall deem necessary for the comfortable support and maintenance of the said William W.

Evans, whose receipts alone shall be good and valid discharges to the said trustee.

'And after the decease of the said William W. Evans, the said trustee shall pay over the balance remaining [if any] to the heirs-at-law of the said William. The said legacy is not to be subject to the debts or contracts of the said William W. Evans.'

"William W. Evans died in September, 1891, a widower, leaving surviving him the following children: James Evans, Annie M. Hess, Gertrude K. Cox, Walter G. Evans, Robert A. Evans, Augusta J. Evans, and William W. Evans, all of whom are of age.

"On November 21, 1891, Charles H. Locher, trustee, filed his account in the register's office of said county, exhibiting a balance in favor of the estate of $4,151.29, which was presented to the court for confirmation on December 21, 1891. On January 5, 1892, exceptions were filed to this account by counsel for Gertrude K. Cox, an heir of decedent, which on January 18 were withdrawn by leave of court, and the account was confirmed absolutely. On January 25, 1892, the undersigned was appointed auditor to distribute the fund.

"A large number of suits by attachments were brought against several of the heirs of William W. Evans, deceased. Before proceeding, however, to pass upon the merits of these proceedings, it will be necessary to construe the clause of the will from which the fund for distribution arises.

"The counsel for Milton Eby, an attachment execution creditor of James Evans, a son of William W. Evans, deceased, the cestui que trust, contends that William W. Evans had under clause nine of the will of his uncle James Evans, deceased, a life estate with a vested remainder in his children as a class, and therefore, James Evans, the grand nephew of the testator, and who was living at the death of the testator, took a vested interest at testator's death.

The principal words of the clause of the will under consideration are: 'And after the decease of the said William W. Evans, the said trustee shall pay over the balance remaining [if any] to the heirs at law of the said William.'

"The fund to be distributed is personal estate. The rules and expressions relative to the vesting of personal estate have

been derived in great measure from the civil law. In that system legacies not immediately payable are divided into two classes: (1) Legacies payable at a future time certain to arrive [as to which, dies legati was said cessisse, though not venisse]: and (2) conditional legacies, or legacies payable on an event which might never happen. The former class were transmissible to the representatives of the legatee, if he died before the time of payment; the latter were not. Hawkins on Wills, *222.

" This division, however, is inapplicable to the English law of legacies, which allows future conditional interests to be transmitted to the representatives of the legatee, and which considers some kinds of conditional gifts as vested ' subject to be divested,' i. e. subject to a condition subsequent and not precedent. Ibid.

" The only definition that can be given of the word ' vested' in English law, as applied to future interests, other than remainders, is, that it means ' not subject to a condition precedent; ' what amounts to a condition precedent, the cases only can determine. Ibid.

" In New Jersey it is held that whether a legacy is contingent or vested, depends not upon the time, but upon the event upon which it is to take effect. If the event is uncertain the legacy is contingent, though the time is fixed; and if certain it is vested, although the time is uncertain. A gift at the death of A. is vested, not it would seem for the reason given by the English authorities, but because the event is certain to happen. Thomas v. Anderson, 6 C. E. Green, 22; Beatty v. Montgomery, Id., 324.

" The inclination is to confine the uncertain events which will make a legacy contingent to those which are personal to the legatee. Van Dyke v. Vanderpool, 1 McCart., 206.

" A similar doctrine is laid down in Taylor v. Mosher, 29 Md. 443. In this latter case the court say: ' To make an estate contingent it must appear from the language used and the nature and circumstances of the case, that the time of payment was made the substance of the gift, and that the testator meant that time as the period of vesting.'

" The general doctrine in this country is that a postponement will not of itself create a contingency, unless it be upon

an event of such nature that it is to be presumed the testator intended to make no gift unless the event happened, or, as it is sometimes put, unless the time be annexed to the substance of the gift. Van Wyck v. Bloodgood, 1 Bradf. 154. In Pennsylvania the same doctrine prevails: Chew's Ap., 37 Pa. 29; Muhlenberg's Ap., 103 Pa. 591.

" The rule of interpretation is : A bequest in the form of a direction to pay and divide, at a future period, vests immediately, if the payment be postponed for the convenience of the estate, or to let in some other interest. Hawkins on Wills, *232 ; McGill's Ap., 61 Pa. 49, and authorities therein considered and approved.

" Thus, under a bequest to trustees in trust for A. during his life, and after his death to pay and divide among his children, the shares of children living in the lifetime of A. are vested, and pass to their representatives : Hawkins on Wills, supra.

" In doubtful cases, the law requires the construction to be made in favor of vested remainders, in preference to contingent, and indefeasible estates in preference to defeasible : Womrath v. McCormick, 51 Pa. 504.

" Assuming then, that if, under the will as it was in fact drawn, William W. Evans took an estate for life, the question is, whether the estate over was vested in his children at testator's death, or was contingent during his lifetime, and at his death vested in those who were then his ' heirs at law' or legal heirs. The counsel, contra, contends that the latter construction is the correct one. This leads us to the question of the intent of the testator as to the form of the concluding part of the bequest, that is, the words ' heirs at law ' of the said William.

" In this country the meaning of the term ' heirs ' depends upon the nature of the property, and whether the gift be substitutional or original ; a bequest of personalty to the heirs of A. is a gift to those who would be entitled to the personal estate of A. under the statutes of distributions : Hawkins on Wills, *91, note 1 ; Eby's Ap., 84 Pa. 241; Ap. of Comly, 136 Pa., 159; Reck's Ap. 78 Pa. 435; Ashton's Estate, 134 Id. 390.

" In the latter case cited, the words of the will were : ' Then

in trust to and for the use of the right heirs of him, the said Charles T. Ashton, in equal shares;' and the Supreme Court, in construing this clause to mean those entitled under the statute of distributions, says: 'The two nephews of 'Charles T. Ashton take, not by representation, but directly under their grandfather's will, as next of kin of their deceased uncle.' See also Eldridge v. Eldridge, 3 Atl. R. 61.

" In the case of Reck's Appeal, supra, the testator in the will before the court said that his widow should receive during her life the interest of one thousand dollars, to be put at interest by his executors, 'and should the interest of the same be insufficient to provide for her, then as much of the principal as may be required.'

" The counsel, in opposition to the view taken by counsel for Milton Eby, attachment execution creditor of James Evans, contends that the interest of the children of William W. Evans is but a contingent legacy, and relies on the case of Pleasonton's Appeal, 99 Pa. 369; but a glance at the case shows clearly the intention of the testator there was to take the case out of the general rule.

" In bequests of personalty no legal significance attaches to the word 'heirs.' Ashton's Estate, supra.

" There is nothing in the context of the will before us to indicate a contrary intention to take the present case out of the rule that when the word 'heirs' is used in a gift of personalty, it is employed to denote those who are entitled to take under the statute of distributions. The heirs here, under the rule, are evidently the children of William W. Evans, deceased, the cestui que trust; and, as such, these children take not by representation, but directly under their granduncle's will.

" Most of these children were in esse at the time of the testator's death. Robert A., William G., and William W., were born since.

" 'But it is now settled that, where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or of any other person, the limitation will embrace not only the objects living at the death of the testator, but all who shall subsequently come into existence before the period of distribution. Such a remainder vests in the objects to whom the description applies at the death of the testa-

tor, subject to open and let in others answering the description as they are born successively. As to the latter, the remainder is contingent until they are in esse, but then it immediately vests, and from thenceforth is attended by all the properties incidental to vested estates: Minnig v. Batdorff, 5 Pa. 505; Bower's Estate, 11 Phila. 620.

" The intent of the testator was, without doubt, to give all the children of William W. Evans a vested legacy. The life estate or legacy to the father was evidently a spendthrift trust, and purposely made an active trust to save as much of the principal of the fund set apart as possible for these children, as well as to provide for a liberal maintenance and support of the cestui que trust. Indeed, the clause of the will under consideration says that ' The said legacy is not to be subject to the debts or contracts of the said William W. Evans.'

" It follows that the whole estate is in the children of the cestui que trust in equal shares.

" Suits of foreign attachments have been issued in the court of common pleas of Lancaster county, and the respective shares of James and Robert A. Evans have been attached in the hands of the accountant. Some of these suits are founded upon judgments, and others upon claims adjudicated before your auditor. There are also assignments of several shares. It remains to select the assignments and attachments which are entitled to priority of transfer and lien on the several shares in contention for the purposes of this distribution. . . . .

" The following assignments and transfers of the interests of the several legatees, and also the following claims by attachments, are selected and awarded to the respective parties:

" Walter G. Evans's interest in the fund for distribution to John Conrad, assignee, for the benefit of the creditors, less one fourth of the costs of audit.

" William W. Evans's interest to Charles H. Locher, transferee, less one fourth of the costs of audit.

" James Evans's interest to Milton Eby, plaintiff in the attachment execution against said James Evans, in the court of common pleas of Lancaster county, of September Term, 1891, No. 13. Debt $650 less one fourth of the costs of audit. The amount of this claim, it will be seen, far exceeds the amount of the legacy to the defendant, and being the prior lien is entitled to the full amount of the legacy to satisfy it.

" Robert A. Evans's interest to the following creditors for their respective amounts : Augusta J. Evans, B. F. Davis, Esq., Edward Edgerly, Bradley and Brother, A. B. Conrad, Ferguson & Pusey, less one fourth of the costs of audit.

" The shares of Annie M. Hess, Gertrude K. Cox and Augusta J. Evans are awarded in full to them.

" One question more has been referred to your auditor, and yet remains to be considered. The counsel for Gertrude K. Cox, legatee, asks that the costs of this audit be imposed upon those distributive shares the assignments or attachments of which has rendered an audit necessary.

" The auditor's first impression was to tax the whole fund for distribution with the costs of audit, in accordance with our practice. It seems to him that a departure from this feature of our practice might establish a precedent which our courts would be loath to adopt. The case before us, however, is an unusual one, and a careful consideration of the matter has induced the auditor to change his view by granting the request. The transferees and attachees of the several interests can file exception thereto, and thus appeal to the court from the judgment of your auditor, should they deem it just and proper.

" It is true that the counsel for Mrs. Cox objected to the appointment of an auditor so far as her share was concerned, as appears by a minute of the same on the back of the account, at the time the court made the appointment to distribute the balance in the hands of the accountant, but your auditor does not understand that the appointing judge intended, in so doing, to pass upon the question now before us, or to even affect the same. Indeed, it was proper for counsel to take this preliminary step in behalf of his client, for a neglect to do so would undoubtedly have been taken as a consent to the appointment to her prejudice.

" It is not so much the amount of money involved as the apparent unfairness of the proceedings, should a part of the costs of audit be imposed upon the distributive shares not in dispute. Had not the other shares have been in dispute an audit would have been unnecessary. Under the circumstances, to impose a tax upon the former would certainly not be equitable. On the other hand, ' the dancer should pay for the fiddler.' It will not be much, if any, burden upon the scrambling

creditors whose vigilance has been rewarded by payment of their respective claims in full.   The costs of audit are deducted from the shares in dispute."

The court, LIVINGSTON, P. J., dismissed exceptions to the auditor's report, relating to the distribution and costs.

*Errors assigned* were (1–6) dismissal of exceptions, quoting them.

*B. F. Davis*, for appellant, cited: Good v. Fichthorn, 144 Pa. 287 ; Ramsdell v. Ramsdell, 21 Me. 288 ; Lynde v. Estabrook, 7 Allen, 68 ; Fiske v. Cobb, 6 Gray, 144 ; Burbank v. Whitney, 24 Pick. 146 ; Jackson v. Delancy, 13 Johns. 537 ; Fisher v. Fields, 10 Johns. 504 ; 1 Perry on Trusts, § 790 ; 2 Perry on Trusts, § 357 ; Hambright's Ap., 2 Grant, Pa. 320 ; Straub's Ap., 1 Pa. 86 ; Paul's Est., 42 Pa. 25 ; Follweiler's Ap., 102 Pa. 581 ; Cox v. Rogers, 77 Pa. 160 ; Sproul's Ap., 105 Pa. 438 ; Millard's Ap., 87 Pa. 457 ; Reck's Ap., 78 Pa. 432 ; Bush's Ap., 33 Pa. 85 ; Harvey's Ap., 35 Pa. 207 ; Kay v. Scates, 45 Pa. 172 ; Pott's Ap., 30 Pa. 168 ; Diehl's Ap., 36 Pa. 120 ; Johnson v. Battelle, 125 Mass. 453 ; Hess v. Shorb, 7 Pa. 231 ; Morrow v. Brenizer, 2 Rawle, 185 ; Allison v. Wilson, 13 S. & R. 330.

*N. F. Hall* and *J. Hay Brown, W. U. Hensel* with them, for appellee, cited: Hawkins on Wills, 232; McGill's Ap., 61 Pa. 49 ; Womrath v. McCormick, 51 Pa. 504; Aston's Est., 134 Pa. 390 ; Minnig v. Batdorff, 5 Pa. 505 ; Bower's Est., 11 Phila. 620.

*A. J. Eberly*, for trustee, not heard.

PER CURIAM, May 31, 1893 :

The subjects of complaint in this case are the refusals of the court to sustain the several exceptions to the auditor's report, recited in the six specifications of error respectively.

An examination of the record discloses nothing that requires either a reversal or modification of the decree.   We quite agree with the learned president of the orphans' court in saying : " We have failed to find anything to convince us that the learned

auditor has erred with reference to the matters complained of by the exceptant, either as to the distribution, or disposition of the costs."

The facts are clearly stated by the auditor, and the questions arising thereon are so satisfactorily disposed of by him, that we affirm the decree on his report.

Decree affirmed and appeal dismissed at appellant's costs.