# VOGT v. VOGT.*

RULE IN SHELLEY'S CASE; WILLS; REMAINDERS; TESTAMENTARY INTENT.

1. The rule in *Shelley's Case* defined. (Following *Sims* v. *Georgetown College*, 1 App. D. C. 72.)

2. Where real estate is required by a will to be converted into money, it will be regarded as if it were money at the time of the testator's death.

3. *Quære*, Whether the rule in *Shelley's Case* is equally applicable to personal property as to real estate.

4. In order that two estates attempted to be created shall coalesce under the rule in *Shelley's Case*, they must be of the same quality,— that is, both must be legal or both equitable; and, if one be equitable and the other legal, the rule will not apply. (Following *Sims* v. *Georgetown College, supra.*)

5. A remainder is a vested one where a present interest, although to be enjoyed in the future, passes under the will to a certain and definite person; and estates will be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary.

6. A trust estate is not to continue beyond the period required by the purposes of the trust.

7. When a trust relating to personalty has been created, and all the

*Heirs.—As to when the word "heirs" will be construed to mean children, see annotation to *Roberson* v.. *Wampler*, 1 L. R. A. (N. S.) 319.

purposes of the trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use, unless there is an apparent intention to the contrary.

8. Where a testator, by his will, directs his executors to sell the residue of his real estate when his youngest surviving child reaches the age of twenty-one years, and to divide the proceeds among his heirs, share and share alike, excepting the share of one son, which is to be held in trust and invested and the income paid to him, and, after his death, the principal to be paid to his heirs, and the son has an infant daughter, the son does not take an absolute estate, but is entitled to the income thereof during his life, with remainder to his daughter; and, the life estate being equitable, and the remainder legal, there can be no merger of the two estates, under the rule in *Shelley's Case.*

9. While the testator's intention will be enough, especially in case of real estate, to exclude the application of the rule in *Shelley's Case* where the technical language used is directly within its application, still, if there be explanatory and qualifying expressions from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the former must yield, and the latter must prevail. The rule is one of property, and not of construction.

10. When the word "heirs" is used in gifts of personalty, it should primarily be held to refer to those who would be entitled to take under the statute of distribution, such as children or next of kin.

No. 1520. Submitted May 10, 1905. Decided June 13, 1905.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in a suit in equity for the construction of a will. *Reversed.*

The COURT in the opinion stated the facts as follows:

The bill in this case was filed by certain of the children of John L. Vogt to obtain a construction of the latter's will, and for some other purposes which it seems have been accomplished by settlement or otherwise, and need not be mentioned.

The defendants are Charles Graff and Frederick C. Gieseking, executors and trustees named in said will, and Matilda S. Vogt, the infant daughter of one of the complainants, Frederick H. Vogt.

The testator, John L. Vogt, died seised and possessed of a large estate. After certain specific devises and bequests, the following disposition was made of the residue: "All the rest and residue of my real estate shall, when my youngest surviving child attains the age of twenty-one years, or one year thereafter, in the discretion of my executors, be sold by my executors at public auction, after due notice in the newspapers of this city. The proceeds of said sales shall be then divided among my heirs, share and share alike, and paid over to them respectively at once, except the share coming to my son, Fred H. Vogt. Said share shall be paid to Charles Graff and Frederick C. Gieseking, as trustees, by them invested, the income therefrom to be paid said Fred H. Vogt, the principal to be paid to his heirs after his death." The single controversy is over the construction of this provision, and is between Frederick H. Vogt and his infant child, Matilda S. Vogt. The question is whether the former takes the absolute estate, or only the income thereof for life with remainder to his said daughter. The decree of the equity court sustained the contention of the father, and has been appealed from by the daughter.

*Mr. Leon Tobriner* and *Mr. J. J. Darlington* for appellant.

*Mr. John C. Gittings, Mr. Justin Morrill Chamberlin,* and *Mr. Elwood F. Pratt,* for the appellee:

1. Under the devise in this case, there is an equitable conversion, and we are now dealing with personal property.

2. "The rule in *Shelley's Case*" is applicable to personal property, and the same principles are applied by analogy and to the same extent. The leading cases upon this point are: *Harris* v. *Leyth,* 4 Harr. & J. 435; *Warner* v. *Sprigg,* 62 Md. 14; *Hughes* v. *Nicklas,* 70 Md. 484; *Engle* v. *Mades,* 25 Wash. L. Rep. 229; *Pairo* v. *Pairo,* 24 Wash. L. Rep. 821.

3. "The rule in *Shelley's Case*" is not a rule of construction, but a positive rule of law. *Daniel* v. *Wartenberg,* 7 Wall. 639; *De Vaughn* v. *Hutchinson,* 165 U. S. 566; *Warner* v. *Sprigg,*

62 Md. 14; *Travers* v. *Wallace,* 93 Md. 507; *Grimes* v. *Shirk,* 169 Pa. 82; 2 Jarman, Wills, 5th Am. ed. p. 584; 5 Am. & Eng. Enc. Law, 2d ed. pp. 640–642.

4. Before "the rule in *Shelley's Case*" can apply, the estate of the ancestor and the estate of the heir must be of the same quality,—both legal or both equitable.

5. The interests of Fred H. Vogt and the heirs in the fund are of the same quality, both equitable, Fred H. Vogt taking an equitable life estate and the heirs an equitable remainder in fee. The devise vests the entire legal estate in the trustees, to cease only after the carrying out of the purposes of the said trust, to wit, the payment of the principal to "his heirs after his death." Hill, Trustees, p. 288; Perry, Tr. § 311; *Denton* v. *Denton,* 17 Md. 43; *Warner* v. *Sprigg, supra; Long* v. *Long,* 62 Md. 68; *Garth* v. *Baldwin,* 2 Ves. Jr. 648; *Engle* v. *Mades, supra.*

6. According to "the rule in *Shelley's Case,*" his heirs, or heirs of his body, are construed as words of limitation, and not of purchase, and inheritance is immediately executed in the person named; hence such limitation does not create a remainder at all, but an exception to the fourth class.    24 Am. & Eng. Enc. Law, 2d ed. pp. 398–400.    In those States where "the rule in *Shelley's Case*" has been abolished, or was never in force, and the common law prevails, the heirs take a contingent remainder. *Putnam* v. *Gleason,* 99 Mass. 454; *Moore* v. *Little,* 31 N. Y. 66.

7. Appellant contends that the word "heirs," used by the testator in the case at bar, should be construed to mean "children or next of kin."    Among the authorities cited in support of this contention, there seems to be a great difference of opinion.    It seems only necessary to say, however, that in all similar cases where the language is such as would bring into effect "the rule in *Shelley's Case,*" it is a matter of no importance.    The following cases are instances where the word "heirs" has been used in relation to personalty, and the rule held to apply; *Butterfield* v. *Butterfield,* 1 Ves. 154; *Garth* v. *Baldwin,* 2 Ves. 646; *Machen* v. *Machen,* 13 Ala.——; *Horn* v. *Leyth,* 4 Harr. & J. 453; *War-*

*ner* v. *Sprigg,* 62 Md. 14; *Hughes* v. *Nicklas,* 70 Md. 484; *Smith's Appeal,* 21 Pa. 9; *Cockin's Appeal,* 111 Pa. 26.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The contention, on behalf of Fred H. Vogt, that he took an absolute estate under the residuary clause of the will aforesaid, rests on the application to its provisions of the rule in *Shelley's Case.* That famous rule has been defined and elucidated by Chief Justice Alvey, speaking for this court, in *Sims* v. *Georgetown College,* 1 App. D. C. 72, 79, in the following words: "Where, in the same instrument, the ancestor takes an estate of freehold, with remainder mediately or immediately to his heirs,  * \* \** the word 'heirs' is a word of limitation of the estate, and not of purchase; or, in other words, that such remainder vests in the ancestor himself, and the heirs, when they take, take by descent from him, and not as purchasers from the grantor or devisor. Thus, if the limitation be to his heirs in general, a fee simple is given to the ancestor; if to the heirs of his body, he takes a fee tail, according to the common law. \* \* \* And the rule is equally applicable to the limitations of equitable as to legal estates; but the estate of the ancestor and the limitation to the heirs must be of the same quality,— that is, both must be legal, or both equitable. The same words that create an estate in fee simple, or an estate in fee tail in legal estates, will, when applied to an equitable estate, create an estate in fee simple or fee tail in that estate." See also *Green* v. *Green,* 23 Wall. 486, 488, 23 L. ed. 75, 76; *Croxall* v. *Shererd* (*Doe ex dem. Croxall* v. *Sherrerd*) 5 Wall. 268, 282, 18 L. ed. 572, 577.

There can be no doubt that the real intention of the testator was that Fred H. Vogt should take nothing more than a life estate in the designation share,—that is, the income thereof during his life; and that the same should then pass into the possession and enjoyment of his children or next of kin; and the question is whether the expression of this intention is so inconsistent

with the aforesaid rule as to be completely thwarted thereby ? The real estate, having been directed to be converted into money, is to be regarded as if it were money at the time of the testator's death. *Cropley* v. *Cooper,* 19 Wall. 167, 174, 22 L. ed. 109, 113. Both parties concur in this view.

While the rule in *Shelley's Case* is perhaps a logical result of the ancient doctrine of feudal tenure, and is, therefore, peculiarly applicable in the construction of grants and devises of land, it may be assumed, also, for present purposes, but without expressly so deciding, that it is equally applicable to grants and bequests of personal property. Under the statement of the rule, as we have seen, in order that the two estates attempted to be created shall coalesce, they must be of the same quality,—that is, both must be legal, or both equitable. If the one be equitable and the other legal the rule will not apply.

The life estate here being equitable, the application turns upon the contention of the appellees that the estate in remainder is likewise an equitable one.

The remainder is a vested one, because a present interest, though to be enjoyed *in futuro,* passes under the will to a certain and definite person. *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458, 474, 18 L. ed. 869, 874. In the same case it is said: "It is a rule of law that estates shall be held to vest at the earliest possible period, unless there be a clear manifestation of the intention of the testator to the contrary." And the rule is the same where the subject-matter is personal property. *Gibbens* v. *Gibbens,* 140 Mass. 102, 105, 54 Am. Rep. 453, 3 N. E. 1.

Bearing this in mind, we are of the opinion that the appellees' contention must be denied. The devise or bequest to the trustees was to them without the addition of their heirs, etc., and their active duties were expressly limited to the life of Fred H. Vogt. Had there been no conversion of the devised estate into personalty, the vested remainder would be a legal estate, because the use would be executed in the heirs. *Ware* v. *Richardson,* 3 Md. 505, 56 Am. Dec. 762; *Green* v. *Green,* 23 Wall. 486, 491, 23 L. ed. 75, 77; *Croxall* v. *Shererd, supra.*

It may be conceded that the statute of uses, in force in Mary-

land and the District of Columbia, does not operate in the case of personal property. But a like result is accomplished by another well-established principle, namely, that a trust estate is not to continue beyond the period required by the purposes of the trust. *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458, 471, 18 L. ed. 869, 873. As said in that case by Mr. Justice Swayne: "This doctrine rests upon a solid foundation of reason and authority, irrespective of the presence or absence of the statute of uses." See also *Young* v. *Bradley,* 101 U. S. 782, 787, 25 L. ed. 1044, 1045; *Potter* v. *Couch,* 141 U. S. 296, 309, 35 L. ed. 721, 729, 11 Sup. Ct. Rep. 1005; *Wilkes* v. *Wilkes,* 18 App. D. C. 90, 96; *Smith* v. *Sullivan,* 20 App. D. C. 553, 557; *Long* v. *Long,* 62 Md. 33, 64, 66. In the case last cited it was said by Chief Justice Alvey, who delivered the opinion of the court: "And, in regard to the personalty, the principle is, that when a trust has been created, and all the purposes of the trust have ceased, or are at an end, the absolute estate is in the person entitled to the last use, unless there is an apparent intention to the contrary." See also *Denton* v. *Denton,* 17 Md. 407; *Owens* v. *Crow,* 62 Md. 491, 494; *Hooper* v. *Felgner,* 80 Md. 262, 272, 30 Atl. 911; *Mercer* v. *Safe Deposit & T. Co.* 91 Md. 102, 117, 45 Atl. 865; *Bacon's Appeal,* 57 Pa. 504, 514.

Instead of there being "an apparent intention to the contrary" in this case, the testator expressly limited the trust to the life estate. No exercise of discretion is required of the trustees thereafter; they are not even required to make partition. Their active duties cease with the life of Fred H. Vogt. The trust is ended thereby, and all that they are required to do is to pay over the principal at once.

The trust being expressly limited to the life estate of Fred H. Vogt, the remainder to the heirs is a legal estate, and hence there can be no union of the two estates under the rule in *Shelley's Case.*

*Bacon's Appeal, supra,* is directly in point. Both real and personal property were vested in trustees by the will, the income thereof payable to a daughter during life, if she died

leaving a husband income to him for life, and from and after the decease of the daughter and her husband, respectively, her share to "go to her right heirs forever." It was held that, the life estate being equitable and the remainder legal, there was no merger.

Mr. Justice Strong, delivering the opinion of the court, said: "The *cestui que trust* being entitled to the whole beneficial enjoyment, and the trustees having no right to interfere with it, no reason was apparent why a legal title should be held continuing in the latter. A severance of the legal right from the beneficial ownership is not to be maintained without some reason. In the case before us the purpose of the trust was accomplished when Mrs. Bacon died. The testator did not intend that the trustees should hold any estate after her death. He contemplated its immediate transmission to the remainder-men,—a transmission by conveyance, indeed, but no holding in trust for those in remainder. There was, therefore, nothing substantial to be secured by treating the legal estate as remaining in the trustees, and only an equitable interest in Mrs. Bacon's heirs. \* \* \* A direction to trustees to convey after the termination of a trust does not continue the legal estate in them and make them trustees of the persons to whom they are directed to convey." The foregoing had application to the real estate, but it was also said that the same rule applied in the case of the personal property under the same trust. To the same effect, *Mannerback's Estate*, 133 Pa. 342, 350, 19 Atl. 552.

Thus far we have dealt with the case upon the lines chiefly pursued in the argument before us. But we think that the decision can be rested upon another ground, the consumption of space in the statement of which is justified by the importance of the case.

The subject-matter involved is personal property, and, as we have before said, the rule in *Shelley's Case* is peculiarly applicable to grants and devises of real estate. *Daniel v. Whartenby,* 17 Wall. 639, 642, 21 L. ed. 661, 663; 4 Kent, Com. 216. Assuming that it also applies to personal property, yet the courts, guided by the cardinal principle that the intention of the testator

shall govern where possible, have always been more anxious to support limitations of personal property than of realty. *Bacon's Appeal, supra.*

As has been said before, no one can doubt what the real intention of the testator was in making this will. Now, while the intention will be unavailing, especially in the case of real property, to exclude the application of the rule where the technical language used is directly within its application, still, "if there are explanatory and qualifying expressions, from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the former must yield, and the latter will prevail. The rule is one of property, and not of construction." *Daniel* v. *Whartenby,* 17 Wall. 639, 643, 21 L. ed. 661, 663. The tendency has always been, and is now more marked than ever, to deny the application of the rule "where the intent of the testator has been made to appear so plainly to the contrary that no one could misunderstand it." *Poole* v. *Poole,* 3 Bos. & P. 627; *Fetherston* v. *Fetherston,* 3 Clarke & F. 67; cases cited and quoted from in *Sims* v. *Georgetown College,* 1 App. D. C. 81. The word "share," as used in the clause under consideration, is a mere designation of the ratio of division in order to make the same certain. The shares, in that sense, of the remaining children, are to be divided among and paid over to them immediately upon the actual conversion of the lands into money; while in the case of Fred H. Vogt, not the share, but the income thereof only, is to be paid to him during his life. The share is never to come into his possession at all. In directing the principal to be paid over after the death of Fred H. Vogt, had the testator used the appropriate words, children, or next of kin, or the like, instead of heirs, this controversy might have been avoided. Most likely, the testator had no apprehension of the conversion worked by his positive direction to sell the real estate, and, had there been no conversion, the word "heirs" commonly understood by persons, like him unlearned in the law, as meaning those who take both real and personal estate in case of intestacy, would be the appropriate one. In that event, as we have seen, the use would have been exe-

cuted in the heirs, and their estate in remainder would be a legal one which would not coalesce with the equitable life estate. As there was an equitable conversion, however, and in view of the plain intention of the testator, we are of the opinion that the word "heirs" must be construed as meaning children or next of kin, or those who would take as distributees under the statute. "When the word 'heirs' is used in a gift of personalty, it should primarily be held to refer to those who would be entitled to take under the statute of distributions." *Sweet* v. *Dutton,* 109 Mass. 589, 591, 12 Am. Rep. 744, and cases therein cited. See also *Tillman* v. *Davis,* 95 N. Y. 17, 24, 47 Am. Rep. 1; *Johnson* v. *Knights of Honor,* 53 Ark. 255, 260, 8 L. R. A. 732, 13 S. W. 794; *Ashton's Estate,* 134 Pa. 390, 395, 19 Atl. 699; *Evans's Estate,* 155 Pa. 646, 649, 26 Atl. 739; Schouler, Wills, § 542.

By taking this view, effect is given to the manifest intention of the testator; a result which all courts seek to accomplish if possible.

The decree will be reversed, with costs, and the cause remanded for further proceedings not inconsistent with the foregoing opinion. It is so ordered.

An appeal to the Supreme Court of the United States was allowed June 15, 1905.