## Bacon's Appeal.

1. A devise was as follows: "I devise to my sons the whole of the real estate intended for my daughters. In trust to and for the use and benefit of my said daughters and their families respectively. And it is my will that the titles thereof shall be held by my said sons in trust as aforesaid, and the income of the respective proportions shall be received by my said sons as trustees, and paid over to my said daughters for their sole and separate use to each daughter during life, and then to her husband in case a husband shall survive, and after the decease of my said daughters and their husbands, the said portion to be conveyed to the right heirs of my daughters respectively in fee simple." *Held*, that the " heirs" of each daughter took a legal estate at her death and there was no union of her estate with theirs.

2. The interests of the daughters under the will were equitable, and the use limited to them was never executed.

3. The duties of the trustees during the life of the *cestui que trust* were active, constant and continuous, not depending upon the coverture of the daughters.

4. The duty of receiving and paying the income involved the necessity of the management and care of the real estate and of preservation for those in remainder.

5. As long as active duties remain to be performed by the trustees, the legal estate must continue in them to enable their performance.

6. In Pennsylvania where lands are given by will in trust to be conveyed, and no other duty or power is assigned to the trustee and he is only an instrument to enable the *cestui que trust* to acquire the legal estate, no conveyance is necessary.

7. The rule in Shelly's Case applied.

March 30th 1868.  Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

Appeals from the Orphans' Court of *Philadelphia*: No. 323, to January Term 1867.

These were appeals from the decree of distribution of estate of Mary Ann Bacon, deceased: One by the executors and George W. Bacon, Harriet H. Price and Fanny E. Bacon, grandchildren of the decedent; the other by Anne E. Bacon and others, minor children of Joseph K. Bacon, another grandchild of the decedent.

The fund for distribution was the balance in hands of Charles W. Bacon and others, executors, &c., of Mrs. Bacon.  Part of the fund came to her under the will of John Warder, deceased, and amounted, as found by the auditor, to $25,390.87.  The other part she derived from other sources and amounted to $13,596.90.

. The main question in the case was the construction of the will of John Warder, the father of the decedent.

A question also was raised on one of the clauses of the will of the decedent.

John Warder died in May 1828, having made his will, dated December 13th 1824, with two codicils, one dated January 12th 1826 and the other May 19th 1826.

The material parts of this will are as follows: "From and immediately after the decease of my said wife, I give and devise my said mansion-house, lot of ground, stable and premises above mentioned, to my sons Jeremiah, John H., William S. and Benjamin H., and the survivors and survivor of them, and the heirs and assigns of the survivor, In trust, nevertheless, and to and for the sole and separate use of my daughter, Mary Ann Bacon, for and during the term of her natural life, not to be liable in any way for the debts, control or contracts of her present husband, or of any husband she may hereafter have, and from and immediately after the decease of my said daughter, Mary Ann Bacon, In trust, to and for the use of her husband, in case he shall survive her, during the term of his natural life, and from and after the decease of my said daughter, Mary Ann, and her husband, then to and for the use of the right heirs of my said daughter, Mary Ann, as tenants in common in fee simple for ever, and to be conveyed accordingly. And it is my will that my said daughter, or in case of her decease, her husband, or heirs, as the case may be, shall be allowed at the rate of $400 per annum, payable quarterly out of my residuary estate, as rent for the said premises, during the life of my said wife."

"I also give and devise to my said sons, and the survivors and survivor of them, and the heirs and assigns of the survivor, the easternmost of my messuages and lots on the south side of Branch street, No. 16, containing in front on Branch street about thirteen feet and extending in depth to the stable hereinbefore mentioned, In trust, nevertheless, and to and for the sole and separate use of my said daughter, Mary Ann Bacon, for and during the term of her natural life, and not to be liable to the debts, control or contracts of her present husband, or of any husband she may hereafter have, and from and immediately after the decease of my said daughter, Mary Ann Bacon, In trust, to and for the use of her husband, in case he shall survive her, during the term of his natural life, and from and after the decease of my said daughter, Mary Ann, and her husband, then to and for the use of the right heirs of my said daughter, Mary Ann, in fee simple as tenants in common and to be conveyed accordingly. And it is my will that the premises thus designed for my daughter, Mary Ann, shall not be chargeable with any apportionment of or contribution towards the ground-rent of $64 per annum, now payable to Gulielma M. Smith."

[Bacon's Appeal.]

" All the rest and residue of my estate, real and personal, what-soever and wheresoever, I give, devise and bequeath to my seven children, the aforesaid Jeremiah Warder, John H. Warder, Mary Ann Bacon, Elizabeth W. Janney, William S. Warder, Benjamin H. Warder and Caroline Cadbury, their several and respective heirs, executors, administrators and assigns for ever, to be equally divided amongst them, share and share alike, as tenants in com-mon.    And it is my will and I do hereby provide, that if any of my children should die leaving lawful issue, that such issue shall take such share and proportion as his, her or their parent would have taken had such parent been living."

The first codicil is as follows :—

" I, John Warder, of the city of Philadelphia, do on further reflection make this codicil to my foregoing will and testament, to wit: I revoke so much of my foregoing will and testament as provides that any real estate therein mentioned either now held by me, or to be hereafter purchased, shall be vested immediately in either of my daughters or their husbands, and in lieu thereof, I do hereby devise and bequeath to my sons, Jeremiah Warder, John H. Warder, William S. Warder, and Benjamin H. Warder and the survivors and survivor of them, and the heirs and assigns of the survivor, the whole of the real estate intended for or which may be purchased for my said daughters, as mentioned in my said will, In trust, nevertheless, and to and for the use and benefit of my said daughters and their families respectively, in the manner pointed out by my said will and testament in relation to my estate on Sassafras and Branch streets, between Delaware Third and Fourth streets.    And it is my will that the portions of the real estate held by me and intended for my daughters, and also of that which may be purchased under the provisions of my said will and testament, shall be designated for my said daughters respectively and their families, and the titles thereof shall be held by my said sons and the survivors and survivor of them, and the heirs and assigns of the survivor, In trust, as aforesaid, and the income of the respective proportions shall be received by my said sons as trustees and paid over to my said daughters respectively, for their sole and separate use to each daughter during life and then to her husband, in case a husband shall survive, and after the decease of my said daughters and their husbands respectively, the said portions to be conveyed to the right heirs of my said daughters respectively, in fee simple."

The second codicil is as follows :—

" I, John Warder, of the city of Philadelphia, do make this second codicil to my foregoing will and testament, to wit: I revoke so much of my said will and testament as would give to either of my daughters directly any part of my personal estate, and in lieu thereof, I do hereby give and bequeath the same and every part

[Bacon's Appeal.]

thereof to my sons, Jeremiah Warder, John H. Warder, William S. Warder and Benjamin H. Warder and the survivors and survivor of them, and the executors, administrators and assigns of the survivor, In trust, nevertheless, and to and for the sole and separate use of my said daughters respectively, in the proportions mentioned in my said last will and testament. And I do order and direct that the said personal estate shall be vested in such productive funds as may be approved by the said trustees and the income thereof shall be received by them and paid over to my said daughters respectively, in the same manner with the income of my real estate, during their natural lives respectively, and in case of the decease of any of my said daughters, leaving a husband surviving, the said income shall be received and enjoyed by the husband during his life, and from and after the decease of my said daughters and their husbands respectively, the share of each daughter shall go to her right heirs for ever. And it is my will that the said personal estate shall not be liable to the control, debts or contracts of the husbands of my said daughters respectively, in any event whatever."

Mary Bacon survived her husband and died unmarried in July 1863, having made her will, dated May 27th 1861, of which the following is one of the clauses:—

"Fourth.—Whereas John Warder, deceased, by his last will and testament, dated the 13th day of the 12th month, A. D. 1824, and two codicils thereto, dated the 12th day of the 1st month, A. D. 1826, and the 19th day of May, A. D. 1826, duly proved on the 17th day of May, A. D. 1828, did make certain devises and bequests in trust for the said Mary Ann Bacon and her right heirs: Now I, the said Mary Ann Bacon, do give, devise and bequeath the said estate thus devised to me under the said will of the said John Warder, whether real or personal, or wheresoever situate, as follows, to wit: one equal ninth part thereof I give, devise and bequeath unto Joseph K. Bacon, Harriet H. Price, George W. Bacon and Fanny E. Bacon (children of my deceased son, George V. Bacon), and the survivors or survivor of them living at the time of my death, their heirs and assigns, as tenants in common."

By the fifth clause of her will, she disposed of estate which was indisputably her own, by dividing it into seven parts or shares, and then, amongst other things, bequeathed as follows:—

"One of which said parts or shares I give, devise and bequeath unto Joseph K. Bacon, Harriet H. Price, George W. Bacon and Fanny E. Bacon, children of my deceased son, George V. Bacon, and the survivors or survivor of them living at the time of my death, their heirs and assigns, as tenants in common."

The above-named legatees, Harriet H. Price, George W. Bacon and Fanny E. Bacon, survived their grandmother. Joseph K.

Bacon died before her, leaving Anne E. Bacon and five other minor children.

The questions were: 1. Whether Mrs. Bacon took an absolute estate in the property derived from John Warder. 2. Whether the gift to Joseph K. Bacon under Mrs. Bacon's will went to his surviving brother and sisters or to his own children.

The auditor, George M. Conarroe, Esq., examined and marshalled the authorities with great care and discussed the questions in a very able report, which the reporter regrets his limits will not enable him to insert at large.

The following are extracts from the report:—

"I. The auditor, after a careful examination of all the cases cited by counsel and many others not cited on the argument, is of opinion that the rule in Shelly's Case is inapplicable and that Mrs. Bacon did not take a fee simple (after discoverture) under the will of Mr. Warder, because the trust as to her was an active subsisting one for the term of her life, which did not cease upon her becoming discovert, and her interest was therefore purely an equitable one, while the estate in remainder to her 'right heirs' was a legal one, and the two estates being of different qualities did not unite."

*    *    "The true question therefore is, not what is the proper construction of the words 'right heirs,' which, without doubt, are ordinarily words of limitation, but has the testator's intention to give the trustees the legal estate until after Mrs. Bacon's death been effectually carried out, by giving them such active duties to perform as will keep the trust alive and prevent its becoming executed? If it has, the law holds Mrs. Bacon's interest to be but a life estate in the income and the remaindermen to take as purchasers. The auditor is of opinion that this intention has been effectually carried out by the direction to 'receive and pay over' and distributes the fund in controversy accordingly."

As to the bequest in the fifth clause, he reported:—

"The Act of 8th April 1833 provided for the case of a devise or legacy 'in favor of,' *i. e.* absolutely in favor of, a child or other lineal descendant. This devise is expressly in favor of *those who were living at the time of testatrix's death*, and those who are necessarily excluded by the testatrix's own language, cannot be helped by this act, for it expressly saves to the testatrix 'the right to direct otherwise.' The will itself is made the law to every legatee. In this case, strictly speaking, there is no lapse, as the beneficiaries whom the testatrix originally intended to take, were such of the four persons named as 'should be living at the time of her death.' Her intention must be gathered from the language of the will. But if there should be considered to be a lapse, the testatrix has provided for it, for according to the provision of her will the whole would go to the survivors. Under the old law a

[Bacon's Appeal.]

lapsed legacy would fall into the residue. Under the Act of 1833, it would go to the issue of the legatee (being descendants of the testator), unless the testator should provide otherwise. Here the testatrix did provide otherwise. The auditor is therefore of opinion that the children of Joseph K. Bacon take no share under the will of Mrs. Mary Ann Bacon, but that the whole of the one-seventh in controversy goes to Harriet H. Price, George W. Bacon and Fanny E. Bacon, the surviving legatees named in the will, and awards distribution accordingly."

George W. Bacon, Harriet H. Price and Fanny E. Bacon and the executors filed exceptions to the report of the auditor in reporting that Mrs. Bacon did not take an absolute estate under the will of John Warder.

The minor children of Joseph K. Bacon, deceased, filed exceptions that the auditor did not award to them the part of the share bequeathed to their father.

The Orphans' Court (Allison, P. J.) overruled all the exceptions and confirmed the auditor's report.

Each class of exceptors appealed to the Supreme Court and assigned for error the confirmation of the report of the auditor in the particulars to which they had respectively excepted.

*E. K. Price* and *W. F. Judson*, for G. W. Bacon and others and the executors, &c., of Mary Ann Bacon, appellants.—The rule in Shelly's Case is adhered to in Pennsylvania: Hileman v. Bouslaugh, 1 Harris 348; Auman v. Auman, 9 Id. 345; George v. Morgan, 4 Id. 95.

These cases were followed by a class of cases tending to destroy the distinction between words of purchase and of limitation: Williams v. Leech, 4 Casey 94; Price v. Taylor, Id. 102; McKee v. McKinley, 9 Id. 92; Naglee's Appeal, Id. 91. They were corrected by Guthrie's Appeal, 1 Wright 16, 17, 21; Chew's Appeal, Id. 23; Haldeman v. Haldeman, 4 Id. 29; Criswell's Appeal, 5 Id. 288.

The life estate and the limitation must be of the same quality, both legal or both equitable: Preston on Estates 382; Jones v. Morgan, 1 Bro. Ch. C. 206; Fearne 56; Smith on Ex'ry. Int., § 470.

If it be in trustees it is only because there remains a trust purpose to be accomplished, and consequently only so long will an equitable estate subsist: Foster v. Walker, 8 Vin. Ab. 356, pl. 5; Fletcher on Trustees ·2 (10 Law Lib.); Mott v. Buxton, 7 Ves. 201; Booth v. Field, 2 B. & Ald. 570; Stanley v. Stanley, 16 Ves. 490; Jones v. Lord Say and Sele, 1 Eq. Cas. Abr. 383; Hayes on Est. Tail, Table 1, pl. 26 (7 Law Lib.); Harton v. Harton, 7 T. R. 652; Davies v. Davies, 1 Ad. & Ell., N. S. 430; Blagrave v. Blagrave, 4 Exch. 550; Hawkins on Wills 145, 150,

[Bacon's Appeal.]

155; 2 Jarm. on Wills 204; Hill on Trustees 242; Doe *v.* Field, 2 B. & Ad. 564; Houston *v.* Hughes, 6 B. & Cr. 403; Gray *v.* Sherman, 5 Allen 198; Shelley *v.* Edlin, 4 Ad. & Ell. 582.

The legal title remains in the trustee as long as the trust requires it: Smith *v.* Starr, 3 Wh. 62; Hammersly *v.* Smith, 4 Id. 126; Steacy *v.* Rice, 3 Casey 75; Rush *v.* Lewis, 9 Harris 72; Player *v.* Nichols, 1 B. & Cr. 336; Watson *v.* Pearson, 2 Exch. 581.

In Kuhn *v.* Newman, 2 Casey 231, we first hear of trusts stricken down by law.

The receipt and payment of income did not continue the trust: Benson *v.* Benson, 6 Sim. 126; Knight *v.* Knight, Id. 121; Barton *v.* Briscoe, Jacob 603; Woodmeston *v.* Walker, 2 R. & Myl. 197; Jones *v.* Salter, Id. 208; Pratt *v.* McCawley, 8 Harris 264; Harrison *v.* Brolaskey, Id. 300; Dubs *v.* Dubs, 7 Casey 151; Quigley *v.* Comm'th., 4 Harris 353; Bush's Appeal, 9 Casey 85; Barnett's Appeal, 10 Wright 392; Fisher *v.* Taylor, 2 Rawle 33; Ralston *v.* Waln, 8 Wright 279; In re Crawford's Trust, 2 Drewry 230.

They referred also on the general question of the application of the rule in Shelly's Case to Physick's Appeal, 14 Wright 128, 136; Nice's Appeal, Id. 148; Criswell's Appeal, 5 Id. 288; Curtis *v.* Longstreth, 8 Id. 302; Robinson *v.* Robinson, Hayes' Essay, Table 3, p. 62; Newton *v.* Reid, 4 Sim. 141; Massey *v.* Parker, 2 M. & Keene 174; Tullet *v.* Armstrong, 1 Beav. 1; Kay *v.* Scates, 1 Wright 31; Sylvester *v.* Wilson, 2 T. R. 444; Shapland *v.* Smith, 1 Bro. Ch. R. 75; Henry *v.* Purcel, W. Black. Rep. 1002; Doe *v.* Ironmonger, 3 East 533; Garth *v.* Baldwin, 2 Ves., Sr., 646; Bale *v.* Coleman, 1 P. Wms. 142.

As to personalty under Warder's will the rule in Shelly's Case does not apply: Smith's Ex. Int. Ch. 19; Smith's Appeal, 11 Harris 9; Myers's Appeal, 13 Wright 111; Patterson *v.* Hawthorn, 12 S. & R. 112; King *v.* King, 1 W. & S. 205; Buckley *v.* Reed, 3 Harris 83; Hawkins 188; Tothill *v.* Pitt, 7 Brown P. C. 453; Elton *v.* Eason, 19 Ves. 73; Williams *v.* Lewis, 1 H. of L. Cases 1013.

*George W. Biddle*, for appellees, adopted the arguments of the auditor and the Orphans' Court. As to the distinction between active and passive trusts, the auditor referred to Lord Say and Sele *v.* Jones, 1 Eq. Cas. Abr. 383; White *v.* Simpson, 5 East 162; Robinson *v.* Grey, 9 Id. 1; Broughton *v.* Langley, 2 Ld. Raym. 873; Phillips *v.* Smith, 12 East 455; 4 M. & W. 429; Holdship *v.* Patterson, 7 Watts 547; Ashhurst *v.* Given, 5 W. & S. 323; Fisher *v.* Taylor, 2 Rawle 33; Vaux *v.* Parke, 7 W. & S. 19; Norris *v.* Johnston, 5 Barr 287; Rush *v.* Lewis, 9 Harris 76; Lancaster *v.* Dolan, 1 Rawle 231; Pullen *v.* Rainhard, 1 Wh. 521; Steacy *v.* Rice, 3 Casey 75; Barnett's Appeal, 10 Wright

[Bacon's Appeal.]

392; 4 Kent's Comm. 229; Hamersly v. Smith, 4 Wh. 126; Smith v. Starr, 3 Wh. 62; George v. Morgan, 4 Harris 95; Rush v. Lewis, 9 Id. 92; Williams v. Waters, 14 M. & W. 172; Harris's Estate, 3 Phila. R. 327.

Mr. *Biddle* argued also for the minor children of Joseph K. Bacon, appellants, and referred to Acts of April 8th 1833 (Intestates), § 2, Pamph. L. 316, Purd. 562, 563, pl. 10–13 (Wills), § 12, Pamph. L. 250, Purd. 1017, pl. 14; Earnest v. Earnest, 5 Rawle 213; McConkey v. McConkey, 9 Watts 352.

During the argument Strong, J., referred to Koenig's Appeal, antea, p. 339.

The opinion of the court was delivered, May 9th 1868, by

STRONG, J.—There are two controlling questions in this case. The first is, whether the trust created by the will of John Warder, for the use of his daughter Mrs. Bacon, continued during her life, though she survived her husband; and the second is, whether the estate given in remainder to her right heirs was legal or equitable. Upon the answers to be given to these questions, depends the rightful determination of all the matters in controversy between the parties.

By the disposition first made by the testator, his sons were constituted trustees of certain real estate for the sole and separate use of Mrs. Bacon during her natural life, and after her decease for the use of her husband, in case he should survive her, and after the death of both Mr. and Mrs. Bacon for the use of her right heirs, and to be conveyed accordingly. By this disposition, no active duties were imposed upon the trustees during the life of Mrs. Bacon. They were made mere depositaries of the title. The only conceivable purpose of the trust was to maintain a separate use for a married woman, and to protect the property against the interference of her husband. On the accomplishment of that purpose, the estate of the trustees must have ended. Consequently had this disposition of the testator's will remained unchanged, when Mrs. Bacon became discovert by the death of her husband, the legal estate would by operation of law immediately have vested in her. But the testator did not leave the matter thus. By a codicil to his will, he revoked so much of it as vested any real estate immediately in either of his daughters, and in lieu thereof he devised their portions to the same trustees in trust to receive the income thereof, and pay it over to the daughters respectively, for the sole and separate use of each daughter during life, and then to her husband, in case a husband should survive, and after the decease of the said daughters and their husbands respectively, the said portions to be conveyed to the right heirs of the daughters respectively in fee simple.

[Bacon's Appeal.]

It is obvious that the trust substituted by the codicil is very unlike that set up at first by the will. It is what is denominated an active trust. It imposed upon the trustees duties beyond that of passively holding the title. And they were constant and continuous; not at all dependent upon the coverture of Mrs. Bacon or any of the daughters. The trustees were to receive the income of the property and pay it over. For this purpose the title was given to them; and for this purpose it was necessary they should hold it during the life of the *cestui que trust.* Had the trust no other object than the special one of protecting the property for the separate use of the daughters, it might have been left as it was first constituted. The imposition of a duty to receive and pay over the income would have been needless. But the injunction of active duties during the life of each daughter, evinces a purpose beyond that of maintaining separate uses. It involved the necessity of management and care of the real estate, and of preservation for those entitled in remainder. The distinction between an active and a passive trust, so well established in England, is fully recognised with us in many cases; and it is one of much importance. It was well said by Sergeant, J., in Vaux *v.* Parke, 7 W. & S. 19, that unless the distinction between these two classes of trusts be regarded, their existence cannot be preserved. So long as active duties remain to be performed by the trustees, the legal estate must continue in them to enable the performance. It cannot, therefore, be held that the purposes of the trust instituted by the testator were all accomplished when the husband of Mrs. Bacon died, and that the legal estate of the trustees then terminated. Her interest under her father's will was equitable, and the use limited for her was never executed.

The second question to be answered is whether the estate limited in remainder to her right heirs was legal or equitable. If it was legal, the rule in Shelly's Case has no applicability, and Mrs. Bacon's estate was but an estate for life, though a remainder was given by the will to her heirs. As already noticed, the codicil directs that the titles shall be held by the trustees to receive and pay over the income during the life of each daughter, and of her husband, if he should survive her, and then the portion of each to be conveyed to the right heirs of the daughter in fee simple. No other duties toward the remaindermen are prescribed than to convey to them. The trustees were not to receive the income and pay it over to them. They were not at liberty to hold a single hour for the use of those in remainder. At most they were but the conduit through which the title was to pass. Yet it must be conceded that in England the mere duty to convey is sufficient to prevent the execution of an use under the Statute of Uses. There, under a trust to convey, the legal estate remains in the trustee until he makes the conveyance, the reason given

being that it is necessary in order to enable the conveyance to be made. It might be doubted whether there is any such necessity, for a power would answer the requirement as well. But in this state, when lands are given by will in trust to be conveyed, when no other power or duty is assigned to the trustee, when he has nothing to do with the enjoyment of the property, and is only an instrument to enable the *cestui que use* to acquire the legal estate, it has been understood that a conveyance is unnecessary. At most it can be but a matter of form, rather than of substance. In fact such conveyances have not usually been made. Until the year 1836 we had no court of equity to compel a trustee to convey, and therefore that was considered as having been done which the trustee should have done, and with the same effect. The *cestui que trust* being entitled to the whole beneficial enjoyment, and the trustees having no right to interfere with it, no reason was apparent why a legal title should be held continuing in the latter. A severance of the legal right from the beneficial ownership is not to be maintained without some reason. In the case before us the purpose of the trust was accomplished when Mrs. Bacon died. The testator did not intend that the trustees should hold any estate after her death. He contemplated its immediate transmission to the remaindermen, a transmission by conveyance indeed, but no holding in trust for those in remainder. There was, therefore, nothing substantial to be secured by treating the legal estate as remaining in the trustees, and only an equitable interest in Mrs. Bacon's heirs. It is true that we have in some cases decreed conveyances from a trustee to a *cestui que trust*, when the purpose of a trust has been fulfilled, but this is not because the legal and equitable titles remained apart. It was to dissipate a useless cloud upon the title, and make the property more marketable. We have done this when the trust had expired by limitation, and when without doubt the legal estate had passed from the trustee, though it had been given to him formally in fee simple. It is no more remarkable that a devise to trustees to convey to another should pass the legal title to that other, than a devise to trustees and their heirs, for a temporary purpose, vests in the trustees the legal estate only until the purpose is accomplished. In both cases the legal title remains severed from the beneficial ownership so long only as there is any useful purpose or substantial reason for maintaining a separation. Accordingly it has been held that a direction to trustees to convey after the termination of a trust, does not continue the legal estate in them, and make them trustees of the persons to whom they are directed to convey. This was noted in Nice's Appeal, 14 Wright 143, where the question was distinctly raised in the argument, and it was assumed in Barnett's Appeal, 10 Wright 392. The decision accords with what, it is believed, has always been considered the law in this state.

7 P. F. SMITH—33

[Bacon's Appeal.]

Holding then, as we do, that by the limitations of the testator's will the right heirs of Mrs. Bacon took a legal estate at her death, there was no union of their estate with hers, and consequently nothing passed by her will.

Thus far we have considered only the directions of the testator respecting his real estate. The same rule is applicable to the personalty. By his second codicil the testator revoked so much of his will as gave to either of his daughters directly any part of his personal estate, and in lieu thereof gave it in trust for the sole and separate use of the daughters, in certain proportions; the income to be received and paid over by the trustees, in the same manner as the income of his real estate during their natural lives respectively, and in case of the decease of any of his daughters, leaving a husband surviving, the income to be received and enjoyed by the husband during his life, and from and after the decease of his daughters and their husbands respectively the share of each daughter to go to her right heirs for ever. The disposition is very similar to that made of the realty, and if that did not confer a fee upon Mrs. Bacon in the land, it is not easy to see how, under the second codicil, she took an absolute interest in the personalty. The rule in Shelly's Case has nothing to do with the question. It is true the principle is well established that where personal estate is bequeathed in language which, if applied to real estate, would create an estate tail or a fee simple, it vests absolutely in the person who would be the devisee in tail or in fee. And this rule applies to cases which come within the rule in Shelly's Case. But the words of Mr. Warder's will, we have seen, would not have given Mrs. Bacon a fee, had the subject of the gift been realty. Besides, the principle stated is not entirely without exception. A very important one is asserted in Knight *v.* Ellis, 2 Brown Ch. 570; Ex parte Wynch, 5 De Gex, McNaughton & Gordon 129; and in Emma Myer's Appeal, 13 Wright 111. These cases relate, indeed, to verbal construction of wills relative to personalty, but they show that courts are more anxious to support limitations of personal estate than they are of realty. The same thing is shown by the greater readiness with which words importing a failure of issue and introducing a second limitation are construed to refer to a definite failure, when applied to gifts of personalty than when applied to devises of realty. It is enough for this case, however, that the second codicil of the will would have given only a life estate to Mrs. Bacon, had the subject of the gift been land. The decree of the court below was therefore right.

Decree affirmed.