In the Trust Estate of Mary E. Tettemer, under the will of Abraham Ritter, deceased, sur account of John·M. Swope, trustee. Appeal of Henry Ritter, Catharine Oberbeck, and Mary Ruffner, heirs at law.

*Wills—Trusts and trustees—Termination of trust.*

Testator gave the residue of his estate to a trustee to invest and to pay the income thereof annually to M. during the lifetime of H.; " and in trust upon the death of H. to pay and deliver the sum of five hundred dollars to R., and to pay and deliver the remainder of said trust fund and securities to the said M. absolutely." M. died before H. *Held*, (1) that the sum of $500 should be retained by the trustee until the death of H. the income thereof in the mean time to be paid to the representatives of M.; (2) that the balance of the residuary estate should be paid at once to M.'s administrator, without waiting for the death of H.

Argued Feb. 7, 1899. Appeal, No. 404, Jan. T., 1898, by Henry Ritter et al., from decree of O. C. Bucks Co., overruling exceptions to auditor's report. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The auditor reported as follows:

The parties agree on the following facts which are admitted in evidence with the same force and effect as if the same had been duly proved before the auditor:

1. Abraham Ritter died on October 29, 1892, unmarried and without issue.

2. Decedent left to survive him one brother, Henry Ritter, and two sisters, Catharine, intermarried with Aaron Oberbeck, and Mary, intermarried with William Ruffner, his next of kin and heirs at law.

3. Abraham Ritter in his lifetime made his last will and testament in writing, dated August 29, 1892, which will, since his death, has been duly proved and admitted to probate in the office of the register of wills for the county of Bucks, where the same remains duly on file, and the same is admitted in evidence.

4. Mary E. Tettemer, one of the legatees mentioned in said will, died on July 20, A. D. 1897, intestate, leaving to survive her a son, Edgar T. Tettemer, and a husband, Enoch Tettemer, and letters of administration upon her estate were duly granted by the register of wills of Bucks county, to Albert K. Kilmer.

5. Said Mary E. Tettemer was a servant and housekeeper of the testator for eighteen years continuously and immediately prior to his death, but no relation by blood or marriage.

### CONCLUSIONS OF LAW.

Abraham Ritter by his will provided inter alia as follows:

"Sixth.—All the rest residue and remainder of my estate, consisting of money, stocks, bonds and other securities, I give, devise and bequeath to John Swope, Sr., to have and to hold the same in trust as follows:

"In trust to invest the same on good securities and receive the annual income or profit therefrom and to pay the same annually less all proper costs and charges to said Mary E. Tettemer during the lifetime of my brother Henry Ritter. And in trust upon the death of the said Henry Ritter to pay and deliver the sum of $500 to my sister, Mary Ruffner, and to pay and deliver the remainder of said trust fund and securities to the said Mary E. Tettemer absolutely; it being my intention that the said Mary E. Tettemer shall have the income only of the residue of

my estate during the lifetime of my brother Henry Ritter, any rule of law to the contrary notwithstanding."

Mary E. Tettemer, the cestui que trust, is dead. Henry Ritter is still living. The trustee has filed his account, showing the amount of the fund in his hands, and your auditor has been appointed to make distribution thereof.

The testator gave to Mary E. Tettemer, first, the income of the residue of his estate, and, second, the balance of the principal from which said income was to be derived, after the payment out of the same of the legacy of $500 to Mary Ruffner, upon the death of his brother, Henry Ritter. It is contended by the heirs at law that the interest of Mary E. Tettemer in the income was a contingent one only because of the employment by the testator of the words " to pay," and his failure to made any substantive gift of the same to her, and therefore that as to the income arising after the death of the cestui que trust the testator died intestate. No such intention on his part is discoverable from the will and none is to be presumed.

It is said in Chess's Appeal, 87 Pa. 362, " No doubt it is the general rule that a legacy is to be deemed vested or contingent just as the time when it is to take effect shall appear to be annexed to the gift or the payment of it. Where there is no substantive gift, and it is only implied from the direction to pay, the legacy is contingent. But this rule is, of course, subject to the necessary exception that a contrary intention is not to be collected from the words or circumstances." In McClure's Appeal, 72 Pa. 418, the Supreme Court, referring to Bayley v. Bishop, 9 Ves. 6, says: " The mode or form of the bequest seems to be regarded by Vice-Chancellor WIGRAM as immaterial. The gift of a legacy under the form of a direction to pay at a future time, or upon a future event, is, in his opinion, not less favorable to vesting than a simple and direct bequest of a legacy at a like future time, or upon a like event. The question is one of substance and not of form; and in all cases it is whether the testator intended it a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies; and the answer to this question must be sought for out of the whole will, and not in the particular expressions only in which the gift is made. Leeming v. Sherratt, 2 Hare, 14."

Is there to be found in the will of Abraham Ritter any evidence of such an intention? He directs the trustee to invest the principal on good securities "and to pay over the income annually to Mary E. Tettemer." The payment, while directed to be made annually, is to be made immediately upon its receipt by the trustees. Such is the plain inference to be drawn from the testator's language. The provisions in reference to the payment of the income is not a direction to pay at a future time or upon the happening of some future event. Further, applying the rule laid down by the court in McClure's Appeal, supra, the legatee's interest in the income must be considered a vested one, in the absence of evidence of any intention on the part of the testator to attach any condition precedent to the bequest.

In Little's Appeal, 81 Pa. 192, the testator gave the entire income of his estate, consisting wholly of personalty, during the life of his daughter Elizabeth, or while she should remain unmarried, to his two daughters, Mrs. Martha J. Little and the said Elizabeth, the former to receive one third and the latter two thirds. The language of the will was, "I direct that two thirds of the income of my estate be for the use of my daughter Elizabeth, and given to her so long as she remains unmarried, and the remaining one third to be paid to my daughter Martha Jane Little." Mrs. Little died before the marriage of Elizabeth, leaving to survive her a husband and children. The Supreme Court held that Mrs. Little had a vested interest in the one third of the said income, which, upon her death, passed to her legal representatives, for the lifetime of Elizabeth, or so long as she should remain unmarried. Your auditor is of the opinion that the interest of Mary E. Tettemer was a vested one. The legacy of $500 to Mary Ruffner is not payable until after the death of Henry Ritter. The income thereof, under the ruling in Little's Appeal, belongs to the legal representative of Mary E. Tettemer. The trustee must therefore retain so much of said fund until it becomes distributable under the terms of the will, collecting and paying over the income thereof in the mean time to the estate of Mary E. Tettemer.

But what disposition is to be made of the balance of the fund held by the trustee? Is it to be held until the time indicated by the testator as the termination of the trust, or is it now payable to those to whom it belongs? The trust was created

for the sole benefit of Mary E. Tettemer.   It does not appear
why the testator fixed the death of his brother Henry as the
time for the payment to her of the principal.   Henry had no
interest whatever in the provision.   The testator clearly ex-
pressed his intention to give Mrs. Tettemer the income during
the life of Henry Ritter and the balance of the principal, after
the payment of Mrs. Ruffner's legacy, at Henry's death.   As
Mrs. Tettemer had a vested interest in the income, her legal
representative would be entitled to receive it so long as the
trust continues.   But how long shall the trust continue?   The
purposes for which it was created have been accomplished.   "It
matters not what may be the nominal duration of an estate given
by will to a trustee.   It continues in equity no longer than the
thing sought to be secured by the trust demands: "   Koenig's
Appeal, 57 Pa. 355.   It is a general principle that a simple or
passive trust cannot continue the legal estate in the trustee,
except for a proper and useful purpose, such as the law will
regard and protect, and as soon as the purpose fails or ceases
to exist, the legal estate becomes executed in the cestui que
trust.   In the former case, equity preserves the trust to give
effect to the donor's right of dominion over his property, and
in the latter, in favor of public policy, permits it to fall as use-
less: Freyvogle v. Hughes, 56 Pa. 228; McBride v. Smyth, 54
Pa. 250; Rife v. Geyer, supra; Dodson v. Ball, 60 Pa. 492.
" An active trust having no object to accomplish for the ben-
efit of the cestui que trust clearly will not be continued for
the mere benefit or pleasure of the trustee.   The object of the
testator having failed or ceased, the law will execute the use : "
Ogden's Appeal, 70 Pa. 508, and cases there cited.   Your audi-
tor thinks that this trust, except as to the legacy of $500, ter-
minated at the death of Mary E. Tettemer, and that the balance
in the hands of the trustee is now distributable.

It is further contended by the heirs at law that the interest
of the cestui que trust in the principal as well as the income
is contingent for the reasons already stated, and that therefore
she had no inheritable estate to transmit.   This contention, in
the opinion of your auditor, cannot be sustained.   It was un-
doubtedly the intention of the testator that Mary E. Tettemer
should have not only the income, but part of the principal of
the residue of his estate.   There is nothing in the will evidenc-

ing any purpose to incumber the gift of the principal with any condition precedent. It is true that the time for its payment is fixed at the happening of a future event that is certain to occur, but there is nothing in the language used by the testator warranting the conclusion that he intended to bestow his gift upon the legatee only in the event of her living to receive it. "The vested or contingent character of an estate is not to be tested by the certainty or uncertainty of obtaining the possession, for that would make its character depend, not upon the terms of its creation, but on the form of the result, nor by the defeasibility or indefeasibility of the right of possession, for many estates are vested without possession as well as with it and yet are defeasible. If there be a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate:" Manderson v. Lukens, 23 Pa. 31. The rule is well established that "where a person bequeaths a sum of money, or other personal estate to one for life, and after his decease to another, the interest of the second legatee is vested, and his personal representatives will be entitled to the property, though he dies in the lifetime of the person to whom the property is bequeathed for life:" Linnard's Estate, 8 W. N. C. 536. When the enjoyment of the entire fund is given in fractional parts at successive periods, which must eventually arise, the distinction between the time annexed to the payment and the time annexed to the gift becomes unimportant. In such cases it is well settled that all the interests vest together. Thus a legacy to one for life and to another at his death goes to the legal representatives of the latter, should he not live to take it: McGill's Appeal, 61 Pa. 51.

Your auditor therefore concludes as to the balance of the residue (1) that the trust has terminated, and that the principal is now distributable, and (2) that Mary E. Tettemer had a vested interest therein and that said fund must be paid to her administrator.

Exceptions to the auditor's report were dismissed in an opinion by YERKES, P. J., which was as follows:

It may be gathered from the will and evidence that the testator, when he died in October, 1892, without issue, and unmar-

ried, left surviving him one brother and two sisters, his next of kin and heirs at law. He also had a servant or housekeeper, Mary E. Tettemer, who had lived with him a number of years. Whether any other persons lived in his household does not appear. Mary E. Tettemer, who has since died, and before the brother, Henry, left a son, Edgar T. Tettemer. The testator gave his farm, and tools, and implements thereon to his brother for life, then to Mary E. Tettemer during her natural life, and at her death to her son Edgar T. Tettemer, his heirs and assigns absolutely. To his sister, Mary E. Ruffner, he gave $1,000, and to his other sister, Catharine Oberbeck, $10.00.

The conviction forces itself upon one's mind after reading the will, that the testator having his primary purpose to secure his brother in the possession of his farm property as it then stood without molestation as to the stock thereon during life, when he came to select the ultimate beneficiaries of his estate, regarded more kindly the Tettemers than he did either of his sisters. What was the reason for this does not appear, and is not material when the main fact is so conspicuous. The contention before the auditor arose over the sixth clause, the purpose of which was to dispose of "all the rest, residue and remainder" of the testator's estate. This he gives to a trustee for investment in securities, during the lifetime of his brother Henry, not for the benefit of Henry, but for the benefit of Mary E. Tettemer, who is to receive the entire income, including the interest upon or out of the sum of $500, which he directs to be ultimately paid to Mrs. Ruffner. For some reason not clearly apparent, he designed that during the lifetime of his brother Henry, Mrs. Tettemer should receive the benefit from $500 more than she was to have when Henry should die. In some way, possibly, he expected this provision would benefit Henry. It is hard to conceive any other purpose in reason. Presumably he was informed of the legal consequences of the gift to his sister and housekeeper of the income of an estate accompanied by an immediate gift of the principal to be paid at a future time. He sought to arrest any effort on her part to seize the immediate possession through setting aside the trust, by creating a trust in the $500 for her benefit. And the declaration that his intention was that she should have the income only of the residue of his estate during the lifetime of his brother, "any rule of law to the contrary

notwithstanding." Did this qualification defeat the immediate vesting of the estate? We are of the opinion that it did not. Whether it would operate to postpone the payment directed in the trust is immaterial since Mrs. Tettemer, for whose benefit the trust operated, did not raise the question. But that the intention was to at once give her an absolute estate, subject to a suspension of payment or delivery, there can be little doubt. The testator declared that Mrs. Tettemer was not only to have the remainder of the trust fund absolutely but contemplated and provided for a bodily delivery of the actual securities to her and also failed to make any other provision for a residue of his estate. The fixed amounts he bequeathed to his sisters indicated a purpose to limit their share of his estate, and the gift in fee of the farm to Mrs. Tettemer's son showed equally the object of the final resting place of his estate. The other matters referred to in the argument are but incidental to the main question and need no comment. If the learned auditor be right upon this main question there would appear to be no one to question the detail or consistency of his method of distribution. It is needless to add anything further to the very clear report of the learned auditor.

And now, to wit: December 5, 1898, the exceptions are dismissed and the report of the auditor is confirmed.

*Error assigned* was in dismissing exceptions to auditor's report.

*Lewis Stover*, for appellants.—The heir or next of kin has a prima facie title, which can be divested only by a written deed or will "manifesting a purpose to that effect:" Kane's Est., 185 Pa. 544; Wengerd's Est., 143 Pa. 615; Chess's App., 87 Pa. 362; Sheaffer's App., 8 Pa. 38.

In Sheets's Est., 52 Pa. 257, the Court held that if a testator gives an absolute interest either in lands or personalty, and afterwards unequivocally shows that he meant the donee to take a less estate, the prior gift will be so restricted.

The doctrine announced above in Sheets's Estate has been closely followed by a line of unbroken authorities down to the present day: Krebs's Est., 184 Pa. 222; Rudy's Est., 185 Pa. 359; Byers's Est., 186 Pa. 404; Barger's App., 100 Pa. 239;

Reck's App., 78 Pa. 435; Woelpper's App., 126 Pa. 575; Handy's Est., 182 Pa. 68.

Testator declares in unmistakable terms that she shall have the interest only until the death of Henry, and then he gives her the principal absolutely. Which implies a higher estate? Keene's App., 64 Pa. 269.

Now, if the testator had known that Mrs. Tettemer would have been dead when Henry died, he could not have directed his trustee to pay and deliver the principal to her: McClure's App., 72 Pa. 418; Bartholomew's Est., 155 Pa. 314; Little's App., 81 Pa. 192.

Where the capital does not vest until a certain time a direction to apply the income in the mean time has invariably been considered as a mere provision for maintenance, and not as accelerating the vesting of either the capital or income, and the right to the income ceases when the right to acquire the capital ends: Wakefield v. Dyott, 4 Jurist, N. S. 1098; Comport v. Austen, 12 Simon, 218; Pleasanton's App., 99 Pa. 363; Lumberman's National Bank's App., 13 W. N. C. 191.

*William Stuckert*; with him *Paul H. Applebach* and *J. C. Stuckert*, for appellee, cited Little's App., 81 Pa. 190; Roberts's App., 59 Pa. 70; Schriver v. Cobeau, 4 Watts, 130; McGill's App., 61 Pa. 51; Silknitter's App., 45 Pa. 365; Koenig's App., 57 Pa. 352; Freyvogle v. Hughes, 56 Pa. 228; Dodson v. Ball, 60 Pa. 492; Ogden's App., 70 Pa. 501.

PER CURIAM, February 20, 1899:

There appears to be nothing in any of the five specifications of error before us that requires reversal or modification of the decree from which this appeal was taken. All the questions necessarily involved have been so fully considered and so satisfactorily disposed of by the learned auditor and court below that further discussion of either of them is unnecessary.

Decree affirmed and appeal dismissed at appellants' costs.