**Kauffman Trust**

*Horace E. Smith* and *Thomas H. Read*, for accountant.

*Richard H. Horn*, for settlor.

*Markowitz, Kagen & Griffith*, for beneficiaries.

KOHLER, P. J., March 3, 1964.—The first and final account of the York County National Bank (now National Bank and Trust Company of Central Pennsylvania), successor trustee under deed of trust dated December 31, 1945, of B. Catharine Kauffman, for the use of John Charles Owens, James Albert Owens, Charles Donald Owens and Douglas Noble Owens, was filed in the Office of the Clerk of the Orphans' Court of said York County on September 25, 1963; and, after due and legal advertisement, was presented to this court for audit and confirmation November 8, 1963; continued pending hearing upon and argument upon ultimate distribution of the balance on the account and finally closed January 9, 1964.

On December 31, 1945, B. Catharine Kauffman created a trust *inter vivos*, then approximately $30,000, with the York County National Bank. The latter is now National Bank & Trust Company of Central Pennsylvania, and is the present accountant.

The account was filed on September 25, 1963. The petition for adjudication, filed with the account, alleges, *inter alia*:

"That the reason for filing the present account is: That all of the beneficiaries, namely, John Charles Owens, James Albert Owens, Charles Donald Owens and Douglas Noble Owens, as set forth in said Deed of Trust, have attained their respective majorities and have completed their formal education. The youngest beneficiary, Douglas Noble Owens having attained the age of twenty-one (21) years on the 22nd day of March, 1963, and having informed the trustee that he has completed his formal education."

And:

"All purposes of the trust have been consummated and, therefore, the trust should be terminated and distribution made."

On October 3, 1963, or approximately a week after the account was filed in the office of the clerk of this court, the settlor delivered a written revocation of the trust she had created, demanding delivery of all the trust assets to her.

The timeliness of the said attempted revocation is the issue before the court.

The trust instrument is recorded in full in Orphans' Court Dkt. 9-D, p. 339. The pertinent provisions are:

"Now therefore it is agreed that the Trustee shall receive and hold the said cash and securities above referred to, and all cash, securities and real estate hereafter paid, delivered or conveyed to it by the Settlor, as hereinabove set forth, upon the following trusts, to wit:

"In trust to control, manage, invest and keep invested free from all control and interference by the Settlor. except as hereinafter provided, and to pay out the income and principal of the trust fund as follows:

"It is the Settlor's intention in establishing this trust to provide for a college and professional education for John Charles Allen Owens, James Albert Owens, Charles Donald Owens and Douglas Noble Owens, grandchildren of Chauncey Reigart, a deceased brother of the Settlor. It is therefore directed that the trust shall continue until the youngest of the above named beneficiaries shall attain the age of twenty-five years of age or until it is determined by the Trustee that all of the beneficiaries who may desire a college or professional education have received such education, whichever shall first occur. During the period of the trust the income from the trust fund and any part or all of the principal of the trust fund required shall be used

by the Trustee in its absolute discretion to provide a college and professional education for each of the beneficiaries above named who may desire such education. The providing of such education means that all bills payable directly to such college or professional schools covering tuition and incidental expenses and the cost of the student's board, lodging and books, and now included in such college or professional school bills, shall be paid out of the trust fund. Upon the expiration of the period of the trust above provided for all of the trust assets then remaining in the hands of the Trustee, or the proceeds thereof shall be paid out in equal shares to such of the above named beneficiaries who are then living and the surviving issue of any deceased beneficiaries, such surviving issue taking *per stirpes* the share which such deceased beneficiary would have received if living at the expiration of the period of the trust.

"As stated above the purpose of establishing this trust fund is for the educational purposes above referred to, and the disposition of any funds remaining at the termination of the trust is incidental to such purpose and is provided for in order that the trust fund may be fully disposed of. In order to accomplish the purpose of the trust the Settlor has deemed it necessary and has directed that the trust fund and the income therefrom shall be treated as one unit, and it is her intention that during the continuance of the trust none of the beneficiaries shall have any interest in the trust or the income therefrom except as recipients of the education hereinabove provided.

"The Settlor shall have the right at any time during her lifetime to revoke and annul this instrument and the trusts hereby created upon ninety days notice in writing under her hand and seal delivered to the Trustee, and in the event of such revocation and annulment, the Trustee shall forthwith pay over, assign and

deliver to the Settlor the trust assets then in its possession or cash, and the Settlor shall have the further right to amend this instrument at any time or to withdraw any part of the principal of said trust fund upon thirty days notice in writing under her hand and seal delivered to the Trustee."

At the audit hearing, counsel to the four grand-nephews of the settlor, the named beneficiaries in the trust instrument, introduced into the record written statements from each of the said four beneficiaries, all dated May 16, 1963, and signed by each, stating as follows:

"I hereby certify that I have completed my education, and do not desire any further college or professional education."

Counsel for the settlor objected to the admission of these signed statements into evidence. At the conclusion of the testimony we admitted them as evidence that the trustee, relying upon their authenticity, made a determination that each of the beneficiaries "who may desire a college or professional education have received such education." An opportunity to continue the hearing for the purpose of calling the beneficiaries for examination on this point was declined.

Also introduced into evidence was a letter from the trustee's trust officer to the settlor, dated March 25, 1963, advising the latter that the trustee had received a letter from the father of the four beneficiaries advising that the youngest was about to become 21 years of age and that all of these had completed their education. The letter from the trustee officer concludes with the following paragraph:

"Under the terms of your trust agreement, our trust is to terminate when all of the children have reached the age of twenty-five or when all have completed their education, which ever event happens first. On the basis of Mr. Owens' letter it would appear that the latter

event has now happened. Would you kindly stop at the bank at your convenience to discuss this with me."

During the period of its administration of the trust, the trustee expended the following sums for education of the four beneficiaries:

James Albert Owens ................... $2,564.00
John Charles Owens ................... 4,668.60
Charles Donald Owens ................ 1,996.54
Douglas Noble Owens ................ 975.00

It would appear that the three older boys attended college for varying periods of time. The youngest, Douglas Noble Owens, has attend a barber school.

The income from the trust supplied all the funds necessary for the education and, over $11,000 remaining from such income, after such expenditures, has been transferred to principal.

The settlor testified that the trust was created by her from funds she had inherited, absolutely and in fee, from her deceased brother, Chauncey Reigart. The latter was the maternal grandfather to the four beneficiaries. Further, that the funds were inherited by her free from any trust whatever. There is no evidence to the contrary. She reiterated the purposes of the trust, as expressed in the instrument, itself, education to the four beneficiaries.

The settlor attempts to explain her inaction to the trustee's letter to her of March 25, 1963, advising that the beneficiaries apparently completed their education, because of her then involvement as a party with litigation in the Superior Court of this Commonwealth. As we understand it, such testimony by the settlor was offered only as evidence in explanation of such inaction and, for that purpose only, it is admitted. The litigation before the Superior Court was an appeal from an order of support against the husband of the settlor in which her interest in the trust under consideration was a matter of evidence and not the issue litigated.

The lower court had no jurisdiction of this trust and the parties before us were not the parties therein. Thus any findings in the litigation before the Superior Court are irrelevant to the issue of revocation before us.

It will be noted that the paragraph in the trust instrument wherein the settlor reserved rights unto herself grants her the power to revoke the trusts "at any time during her lifetime," and the "right to withdraw any part of the principal at any time." The four named beneficiaries contend that such rights are necessarily limited, in time, to the duration of the trust and that the trust legally terminated when the said beneficiaries notified the trustee, on or about May 16, 1963, that each did not desire any further college or professional education. They point to the provision that "upon the expiration of the period of the trust" all the trust assets, or proceeds, shall be paid over to the four named beneficiaries, in equal shares.

In the fifth paragraph of the trust agreement, the period of duration of the trust is specified as follows:

"It is therefore directed that the trust shall continue until the youngest of the above named beneficiaries shall attain the age of twenty-five years or until it is determined by the Trustee that all of the beneficiaries who may desire a college or professional education have received such education, whichever shall first occur."

It is admitted that the youngest of the beneficiaries, Douglas Noble Owens, has *not* attained the age of 25 years. He was 21 on March 22, 1963, and the others are approximately 34, 31 and 25 years of age, respectively.

There can be no doubt that the purpose and intention of the settlor in the establishment of the trust was to provide a college and professional education for her named grandnephews.

Further, there is no doubt, as set forth in their written statements and acknowledged by their own counsel at the audit hearing to be fact, that they desired no further college or professional education as of May 16, 1963. The record of payments discloses that each received some such education. The exact date of determination of such fact by the trustee, as specified for termination of the trust in the trust agreement, is either (1) the date of its receipt of the written statement from the four beneficiaries on May 16, 1963, or (2) the date of its allegations in the sworn petition for adjudication filed with the account on September 25, 1963. Either event is prior to the execution of the written revocation by the settlor.

Extensive research by counsel and the court disclosed no case in any jurisdiction where the settlor of a revocable trust has attempted to exercise a power of revocation after the trust purposes were accomplished but before the corpus had been distributed to the remaindermen.

Counsel points to the established principle in Pennsylvania that a trust is terminated when the active duties of the trustee have been completed even though there is a direction to convey the trust *res* to the beneficiaries and the conveyance has not been made. This is settled law in regard to realty. See Bacon's Appeal, 57 Pa. 504; Westcott v. Edmunds, 68 Pa. 34; Sheaff's Estate, 231 Pa. 251; Eaves v. Snyder, 368 Pa. 459. Some of the cases rely upon the Statute of Uses, which is in force in Pennsylvania, to transfer legal title to the beneficiaries by "executing the use" upon termination of the trustee's duties. Others reason that title immediately passes to the beneficiaries, without a conveyance, by virtue of the principle that "equity regards as done that which ought to have been done."

The Statute of Uses does not execute a use of personal property: Restatement, Trusts §70.

Bacon's Appeal, supra, included personalty as part of the trust corpus; however, an analysis of the opinion discloses that the court arrived at the same result as to disposition of the personalty but not for the reason heretofore mentioned as to disposition of the realty. Ritter's Estate, 190 Pa. 102, cited by counsel for the beneficiaries, involved the issue of whether a trust of personalty was "dry" and thus terminated. Lowitz Estate, 360 Pa. 91, also cited by counsel, determined that a legacy created an inactive trust and thus was payable immediately to the beneficiary. In our opinion these cases are not authority for the proposition that *legal* title to a trust corpus of personalty is immediately vested in the beneficiaries at the happening of the event calling for termination of the trust, and prior to transfer delivery by the trustee. In our opinion they are authority for the proposition that the beneficiary is entitled, in such cases, to an immediate transfer and delivery to him.

This distinction is well expressed by Professor Scott as follows:

"The distinction between the automatic termination of the trust by the vesting of the title to the trust property in the beneficiary, and the power of the beneficiary to compel the termination of the trust by compelling the trustee to transfer the title to the trust property to him, is sometimes lost sight of.

"In the case of personal property fewer formalities are required for the transfer of legal interest than in the case of real estate; in the case of personal property the intention of the grantor is determinative. If the grantor manifests an intention that the title should remain in the trustee until he conveys it to the beneficiary, the trust should not automatically terminate on the fulfillment of the purposes of the trust": 1 Scott, Trust 2d 70.

Such distinction has been recognized in Pennsylvania. In Thaw Estate, 163 Pa. Superior Ct. 484, a legislative intention in the adoption of personal property tax statutes was held to preclude the termination of a trust of personalty even after the death of the life beneficiary, until the actual transfer and delivery to the remaindermen beneficiaries.

Again, in Swoboda v. United States, 258 F. 2d 848, the Circuit Court of Appeals held that a Pennsylvania trust of personalty did not terminate until the trustee had transferred the corpus to the beneficiaries, for the purposes of income taxation.

The Restatement of the Law of Trusts, section 344, Comment (a) is as follows:

"Although the time for the termination of the trust has arrived in accordance with the terms of the trust, the trustee does not thereby necessarily cease to be trustee, but he continues to be trustee until the trust is finally wound up. *The period for winding up the trust is the period after the time for termination of the trust has arrived and before the trust is terminated by the distribtuion of the trust property.*"

Further under the express provisions of section 981 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.981, there is a mandatory duty upon a trustee to account "at the termination of the trust."

The intent of the settlor, as expressed by the words she used in 1945, must be ascertained, and the circumstances under which the deed was executed are pertinent in the ascertainment of the general purpose: Herr Estate, 400 Pa. 90; Pew Trust, 411 Pa. 96.

The settlor, having absolute ownership of the funds placed in trust, reserved for herself the right to revoke the trust absolutely at any time during her lifetime, to amend the trust or to withdraw principal at any time, and the right to require approval by her of the sale of any of the original trust assets. She further

limited the interests of the beneficiaries by spendthrift provisions. She also specifically stated that "it is her intention that during the continuance of the trust none of the beneficiaries shall have any interest in the trust or the income therefrom except as recipients of the education hereinabove provided."

We believe that all of these provisions, when considered with the circumstances surrounding execution of the trust; namely, a gratuitous donor providing for the future education of such distant relatives as grandnephews, manifest an intention that title to the corpus should remain in the trustee until transfer and delivery to the beneficiaries, at least for the purposes of revocation or withdrawal. The latter rights were reserved "at any time during her lifetime." This can only mean at any time until the trust term was, by its terms, completed and the corpus paid and delivered to the beneficiaries.

All doubts are to be resolved in favor of the donor whose property has become the subject of the trust: Friedrich Estate, 26 D. & C. 2d 51.

In this connection it is pertinent to quote Mr. Justice Musmanno in Schautz Trust, 395 Pa. 605, 612:

"Fairness dictates that a person who sets up a trust without consideration should not in the end be regarded as a stranger in the realm of his own benevolence. Words used by him in the creation of the trust are not to become weapons against him unless no other interpretation is possible." See Goodell's Estate, 53 D. & C. 13, 21 (1945).

There is nothing in the record to indicate that the trustee, by any formal or corporate action, had made a "determination" that the beneficiaries had received all the education they desired and which determination was to form the basis for the termination of the trust under its express terms. There is evidence, undisputed, that the trustee made no communication whatsoever

with the settlor after the letter from its trust officer to her on March 25, 1963, until she received written notice of the filing of its account. Upon receiving such notice, she immediately filed her written revocation and demand for return of the trust assets to her. We believe that under any proper and legal construction of the terms of the trust such revocation was timely, at least until the confirmation of the trustee's account and order of distribution by the court.

The balances on the account are:

Principal Personalty ................\$40,028.61
Income Personalty ...................    731.93

Making consolidated balance ..........\$40,760.54
Credits are allowed for:
  1963 income tax ............\$242.58
  James G. Morgan, Clerk filing
    and recording trust deed ...    6.00
                                  ———    248.58

Leaving balance .....................\$40,511.96

All of which is hereby awarded in distribution to B. Catharine Kauffman, settlor, under her written revocation and withdrawal dated October 2, 1963.

### Decree

And now, to wit, March 3, 1964, it is hereby ordered, adjudged and decreed that the first and final account of The York County National Bank, now National Bank and Trust Company of Central Pennsylvania, successor trustee under deed of trust dated December 31, 1945, of B. Catharine Kauffman, for the use of John Charles Owens, James Albert Owens, Charles Donald Owens and Douglas Noble Owens, is confirmed; and it is further ordered, adjudged and decreed that said accountant pay the distribution as set forth in the foregoing schedule of distribution.

This decree is entered nisi and, in the absence of exceptions filed thereto within 10 days from the date hereof, the same shall become final, as of course.