## Rockhill's Estate.

*Mortgage—Deed—Defeasance—Act of June 8, 1881, P. L. 84—Evidence.*
Under the Act of June 8, 1881, P. L. 84, a written defeasance signed by the grantee, but unacknowledged and unrecorded, though contemporaneous with the execution of a deed absolute on its face, will not be admitted to convert such a deed into a mortgage.

*Will—Trust and trustees—Spendthrift trust.*
Testator by his will gave the residue of his estate to his executors to pay the income to his widow, and after her death to divide the income into four equal parts and to pay one-fourth to each of his children, naming them, for life, with provision that upon the death of any child, the children of such deceased child should take the parent's share of the principal; and in case of the death of any of testator's children not leaving issue surviving, the share of such child so dying should be held by the trustees for the benefit of the survivors. The trustees were given full and ample powers as to the control and management of the estate, including a power of sale in the broadest terms. Testator also directed as follows: "The income shares or estates given or created by this will shall belong and be received only by those whom I have designated, and in no manner shall be assigned or transferred by them, or be made liable to attachments, execution, or other process for their debts or liability, and their receipts alone shall discharge the trustees." *Held*, that the clause last quoted included a grandson of a deceased son, and prevented an assignment by him of his "share" or "estate."

Argued Dec. 12, 1904.   Appeal, No. 138, Oct. T., 1904, by William D. Neilson, from decree of O. C. Phila. Co., Jan. T.,

1883, No. 335, dismissing exceptions to adjudication in Estate of Daniel H. Rockhill, deceased.    Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to adjudication.
The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Henry B. Hodge,* for appellant.—It appears clear to counsel for appellant that the testator, by his will, gave equitable estates for life to his children, subject to a spendthrift trust, and a legal remainder in fee to his grandchildren, so that any subsequent attempt—even if it were the intention of the testator—to deprive them of the power of alienation, an inseparable incident of such an estate, must be ineffective and void: Walker v. Vincent, 19 Pa. 369; Naglee's App., 33 Pa. 89; Turner v. Fowler, 10 Watts, 325; Reifsnyder v. Hunter, 19 Pa. 41; Jauretche v. Proctor, 48 Pa. 466; Keyser's App., 57 Pa. 236; Rife v. Geyer, 59 Pa. 393; Shallcross's Est. 200 Pa. 122; Sharpless's Est. 151 Pa. 214.

But even if there may be a valid trust, and the power of alienation withheld, where the person entitled takes the entire beneficial interest, it is submitted that it is still necessary that there be active duties in the trustee.

In Pennsylvania in order to constitute an active trust it is necessary that there be both a lawful object to be accomplished and active duties in the trustee: Dodson v. Ball, 60 Pa. 492; Keyser's App., 57 Pa. 236; Rife v. Geyer, 59 Pa. 393; Bacon's App., 57 Pa. 504; Williams' App., 83 Pa. 377; Culbertson's App., 76 Pa. 145.

In the case at bar, no active duties whatever are given the trustees with respect to the shares of the grandchildren. The direction to "set apart" their shares, at most, is equivalent only to a direction to convey, and, as no conveyance is necessary to pass title, such direction is not sufficient to retain the legal title in the trustees: Bacon's App., 57 Pa. 504; Keyser's App., 57 Pa. 236.

As the subject of the assignment, in the case at bar, was real

estate, and as the assignment was recorded, but not the collateral defeasance, the defeasance cannot operate to reduce the absolute assignment to a mortgage by virtue of the provisions of the Act of June 8, 1881, P. L. 84: Grove v. Kase, 195 Pa. 325; Molly v. Ulrich, 133 Pa. 41; Rathbon v. Specht, 18 Pa. C. C. Rep. 19; Sankey v. Hawley, 118 Pa. 30; Crotzer v. Bittenbender, 199 Pa. 504; Lohrer v. Russell, 207 Pa. 105.

*E. B. Lewis* for Frank W. Leisenring, appellee.—A conveyance which in its form is a deed may be shown to be a mortgage: Colwell v. Woods, 3 Watts, 188; Kunkle v. Wolfersberger, 6 Watts, 126; Kerr v. Gilmore, 6 Watts, 405; Rankin v. Mortimere, 7 Watts, 372; Woods v. Wallace, 22 Pa. 171; Houser v. Lamont, 55 Pa. 311.

This clause is certainly a good example of what is commonly known as a "spendthrift's trust." While the common law seems not to favor restraints to alienation of equitable life interests, yet in Massachusetts and Pennsylvania they are permitted, and in a long line of decisions beginning with Fisher v. Taylor, 2 Rawle, 33 (1829), and ending with Minnich's Estate, 206 Pa. 405 (1903), the principle is fully recognized by our Supreme Court.

This rule of law has been expressly sustained in the following cases: Fisher v. Taylor, 2 Rawle, 33; Overman's Appeal, 88 Pa. 276; Thackara v. Mintzer, 100 Pa. 151; Beck's Estate, 133 Pa. 51; Minnich's Estate, 206 Pa. 405.

OPINION BY RICE, P. J., October 9, 1905:

By his will dated in 1868, the testator, who died in 1876, directed his executors and trustees to continue any business in which he was engaged at the time of his decease for such length of time as they should deem for the best interest of his estate, and for that purpose to use any funds belonging to his estate or arising from the sale of any portion thereof under the power of sale thereinafter given, to borrow money on the credit of his estate, and to bind the same by signing or indorsing notes, bonds or other instruments of writing requisite in carrying on said business, and "to do and perform every act in the management, conduct or winding up of said business necessary, in the same manner as I might or could do if living, my object being

to confer unlimited power and discretion on my said executors and trustees, in every respect in the administration or winding up of my estate and in the payment of or arrangement of my liabilities." Coupled with this direction a power of sale in the broadest terms was given: "the proceeds arising therefrom to apply to the payments of my debts, to the carrying on of my business and to the other purposes of this, my. will, hereinafter more fully set forth." The importance of the foregoing provisions in the decision of the question before us will appear later. Following these were directions to his executors and trustees, after the payment of debts, to pay the rents, income and profits of the residue of his estate to his wife during her life, and after her death to divide the income annually into four equal parts, and pay one fourth to each of his children for life, with provision that upon the death of any child the children of such deceased child should take a fourth part of the principal. "This shall be repeated" (we quote from the will) "as often as the death of any of my children shall occur, and the trustees shall set apart one-fourth part successively and respectively when and as often as the death of my children shall occur." The will contains the further provision that in case of the death of any child without leaving issue surviving him or her the one fourth part of such child should be held by the trustees during the lives of the other children "and the income paid to such living children during their lives, and the principal divided among the children of my children in manner above provided for, the only difference being that the number of my children will be less and the share larger." Lydia Ann Leisenring, one of the four children, died in 1899, leaving to survive her two children, Frank W. Leisenring and Anna L. Northrup, both of whom are of full age. The testator's widow died in 1890, and William H. Rockhill, one of his four sons, died without issue before Mrs. Leisenring.

By deed dated September 5, 1902, and duly recorded, Frank W. Leisenring assigned to Marion A. Martin, for the consideration of $50.00, " all the estate, right, title and interest, share, property, claim and demand of every kind and whatsoever nature either at law or in equity whether vested or contingent of him the said party of the first part of, in and to the estate of the said Daniel H. Rockhill, deceased." By deed

dated in November, 1902, Marion A. Martin and Frank P.
Martin, her husband, assigned, in the same terms, the share of
Frank W. Leisenring to W. D. Neilson, the appellant, the
consideration mentioned in the deed being $51.57. As a matter
of fact the assignor's share was worth at least $1,000, and the
assignment was made as security for a loan of $50.00. A sepa-
rate paper executed at the same time stipulated that the assign-
ment was to secure the payment of the sum of $50.00 with legal
interest, within one month from date, and provided that upon de-
fault in payment thereof the assignment should become absolute
in the assignee, who should have the right to sell, or assign, at
public or private sale, the right, title and interest of the assignor
in the testator's estate, retaining out of the proceeds thereof the
amount of the debt with interest and an attorney's commission
of ten per cent. This paper was signed by Leisenring; but as
printed in the transcript of the evidence submitted to us, it
does not appear to have been executed and acknowledged by
the grantee in the deed, or to have been recorded.

As the account shows that Marion A. Martin, the first as-
signee, and W. D. Neilson, the second assignee, have, together,
received from the trustee nearly three times the amount of
the original loan, it is apparent that if the separate paper last
referred to had been duly executed and recorded, the appellant
would not be entitled to claim any part of the share of Frank
W. Leisenring of the fund for distribution. Upon this point
the learned judge who delivered the opinion of the orphans'
court correctly says : " Once a mortgage always a mortgage is
a fundamental maxim. Forfeitures are odious in equity and
the borrower will be permitted to redeem notwithstanding the
fact that the time of payment has passed. See Story's Equity,
sec. 1316. The law in this respect is not changed by an ex-
press provision in the defeasance that the conveyance shall be
absolute if the money is not paid at the day : Rankin v. Morti-
mere, 7 Watts, 372." But the appellant claims that the assign-
ment cannot be construed as a mortgage because the provisions
of the Act of June 8, 1881, P. L. 84, relative to defeasances
were not complied with. In answer to this contention, which
we shall consider in its legal aspect only, it has been suggested
that " the failure to record, by analogy to the decisions with
regard to recording deeds, is probably immaterial as against

the mortgagee and all others except bona fide purchasers for value." A similar argument was made in Sankey v. Hawley, 118 Pa. 30, but without success, and it was there held—the suit being between the parties to the deed—that a written defeasance, signed by the grantee but unacknowledged and unrecorded, though contemporaneous with the execution and delivery of a deed absolute on its face, will not be admitted to convert such a deed into a mortgage. Chief Justice GORDON, distinguishing the act of 1881 from the act of 1715, said : " It is true, the design is to prevent frauds, but it also definitely prescribed the process by which this is to be accomplished; not by recording alone, for that is but one of the prescriptions, but by directing how, and how only, a deed absolute shall be reformed. The question thus becomes one of evidence. It is proposed to impeach a deed : it is not what it purports to be, a conveyance in fee, but only a mortgage. Now the question is, how shall this be proved ? The statute answers this by saying you can do this in no other way than by the exhibition of a written defeasance, signed, sealed, acknowledged, delivered and recorded." In Lohrer v. Russell, 207 Pa. 105, which also was a suit between the parties to the deed, Justice POTTER declared with equal emphasis that " the defeasance, although in writing and made at the time the deed was made, could not have the effect of reducing it to a mortgage, unless the defeasance was also acknowledged and recorded . . . . within sixty days from the execution thereof." This language is too plain to warrant us in saying that either acknowledgment or recording is a nonessential as between the parties to the transaction. See also Sterck v. Germantown Homestead Co., 27 Pa. Superior Ct. 336, and cases there cited.

Assuming for present purposes that the act of 1881 is applicable it becomes necessary to consider the question of the validity of the assignment itself; or rather, its operative effect in the distribution.

The will contains this clause : " Eighth. The income shares or estates given or created by this will shall belong and be received only by those whom I have designated, and in no manner shall be assigned or transferred by them or be made liable to attachment, execution or other process for their debts or liabilities, and their receipts alone shall discharge the trustees." We

agree with the learned court below that this language is broad enough, to include the "share" or "estate" given to the assignor, the grandson of the testator, at the death of his mother, to whom the income was given for life. Having arrived at the conclusion that this was the testator's intention, the learned auditing judge held that the case was ruled by Beck's Estate, 133 Pa. 51. In that case the testator gave to his executor a power of sale, and, after the payment of his debts and funeral expenses, gave to his children—naming them—and to his step-daughter, Elizabeth Beck, in equal shares, the proceeds arising from the sale of his real and personal property. It was held that the share of Elizabeth Beck, being given upon condition that it should not be liable to be attached or seized for the debts of the legatee, but should be paid by the executors directly to her without diminution, was protected from attachment in the hands of the executors at the suit of the legatee's creditors. True, the court in that case did not deal directly with the question of the validity of a voluntary assignment of the legatee's share, for that precise question did not arise ; but looking at the reasoning of the opinion, it is not clear that a different result would have been reached if that had been the question presented. The point of the decision was that the share was payable only to her. It is quite as evident in the present case that the testator intended, so far as it was within his power, to relieve his executors and trustees from the embarrassment in winding up his estate which would be incident to dealing with others than the beneficiaries, and also to protect their shares against their own improvidence until they actually passed into their hands or the full purposes of the trust recited at the outset of this opinion were accomplished. It is difficult to distinguish the case from the one cited. The learned judge, who wrote the opinion of the court overruling the exceptions, concluded that if the case is not ruled by Beck's Estate, 133 Pa. 51, it certainly is by Minnich's Estate, 206 Pa. 405. In that case the testatrix directed that her estate be converted into money and that after payment of debts and one legacy, the residue be divided into two parts or shares for her two children, Jacob and Maria, so that after deducting advancements "they may have share and share alike." The share of Jacob she put in trust with directions to the trustee to invest the

funds at interest at his discretion, either in real estate or otherwise, and pay to Jacob the interest, and if he invested in real estate to give him the income or occupation of the same. Other provisions of the will are referred to in the opinion of the Supreme Court which was as follows : " The testatrix, it is true, as appellant claims, left him the entire net income of his share of her estate, without any devise over of the corpus after his death. But she put it in the hands of a trustee with active duties to perform in the payment of taxes and repairs if the devisee failed to do so, and with the express direction that ' the same is not to be in anywise liable for any debts owing by my said son, nor for any debt that may be hereafter contracted by him.' This was a valid spendthrift trust which could not be allowed to be defeated by handing over the corpus of the estate to the control of the cestui que trust." The opinion, which we have quoted in full, shows clearly the ground of the decision, namely, that the trustees had active duties to perform. The case, therefore, does not necessarily conflict with Keyser's Appeal, 57 Pa. 236, where it was held, " that the mere interposition of a dry trustee will not enable a testator to give a beneficial estate in fee simple with all the incidents of ownership, except that of liability for debts," and accordingly the trustees were decreed to convey the legal estate to the cestui que trust. A fortiori, a restriction against alienation in general annexed to such a gift cannot be made effectual by the mere creation of a dry trust. In this state where lands are given by will in trust to be conveyed, where no other power or duty is assigned to the trustee, when he has nothing to do with the enjoyment of the property, and is only an instrument to enable the cestui que trust to acquire the legal estate, it has been understood that a conveyance is unnecessary; at most it can be but a mere form : Bacon's Appeal, 57 Pa. 504. It is argued that this case comes within this principle, because immediately upon the death of Mrs. Leisenring it was the duty of the trustees to convey an undivided fourth part of the estate to her children. There is force in the argument, but we are inclined to the opinion that it does not give full effect to the direction to " set apart one fourth part " of the principal. This direction is to be read in connection with the previous provisions of the will giving to the executors the most extensive powers and discretion. One

purpose for which these powers were given was to enable them to "set apart" the share of the principal coming to these grandchildren. They were to exercise a discretion as to the mode of converting the property for that purpose, whether by public or private sale; and in view of the other duties imposed upon them in winding up the testator's business and estate we are not willing to accede to the proposition that they had no other duty or power with regard to the share of these grandchildren than simply to transmit to them the legal title to an undivided fourth part of the estate. They had the power of sale, notwithstanding the death of Mrs. Leisenring, and having exercised it, it requires no extension of the doctrine of Beck's Estate and Minnich's Estate to hold that the share of the proceeds going to the appellee under the will was payable only to him. The case is close to the border line, it must be conceded, but after deliberate consideration of the question, the learned and able argument of the appellant's counsel has left us unconvinced that it was wrongly decided in the court below.

Decree affirmed and appeal dismissed at the cost of the appellant.