## Harrison's Estate

*Francis Shunk Brown,* for petitioner.

STEARNE, J., December 23, 1935.—A petition to terminate a trust created under the will of testator has been presented to the court, joined in by the cestui que trust, the corporate charitable remainderman and the trustee.

It is urged that the decree presented must be granted because of the provisions of the Act of April 14, 1931, P. L. 29, amending section 9 of the Act of April 18, 1853, P. L. 503.

The provision of the Act of 1931 reads as follows:

"That whenever in the course of the administration of a trust created by deed or by the will of a decedent, who, either before or after the passage of this act, shall have died domiciled in this State, by the provisions of which deed or will the grantor or testator shall have directed the payment of an annuity or annuities, or created an estate for life or for lives or for a term of years, with vested remainder to a corporation or association formed for literary, scientific, charitable, or religious purposes, it shall be made to appear to the court having jurisdiction of the administration of such estate or trust that all parties in interest in said estate or trust, still living or in corporate existence, have agreed that the trust be settled and ended upon terms mutually satisfactory to them, or that the interests of the annuitant or annuitants or of the beneficial owner or owners of the estate for life or for years have been donated to or acquired by the corporation or association formed for literary, scientific, charitable, or religious purposes, holder of the vested interest in remainder, said court may—due notice having been given to all parties in interest, and the court being satisfied that all parties who are or *may be interested in the trust property are in existence, are sui juris* and are agreed, and that annuitants or cestui que trustent are properly protected— decree that the trust be settled and ended in whole or in part and award to such literary, scientific, charitable, or religious corporation or association the sums to which it may be entitled". (Italics ours.)

Derbyshire's Estate, 16 D. & C. 200, affirmed by the Supreme Court in 306 Pa. 278, upheld the provisions of the act as applied to the termination of such a trust created prior to its passage.

By the third clause of the codicil dated December 13,

1934, testator bequeathed $100,000 to the Girard Trust Company in trust to invest and to pay the net income quarterly to his niece, Sarah Crosby Neilson, for life, and at her decease said fund to form part of his residuary estate. Under paragraph 18 of the will the residuary estate is now payable to the University of Pennsylvania for the scientific and charitable purposes therein expressed.

All payments, both of principal and income, are protected by spendthrift provisions of most comprehensive scope, which may be found in item 20 of the will and clause 10 of the codicil of December 13, 1934.

The executor filed its account September 20, 1935, which was called for audit on November 4, 1935, before Henderson, J. By adjudication filed November 15, 1935, the above trust fund of $100,000 was awarded to the trustee, for the purposes of the trust, in accordance with the prayer of the petition for distribution annexed to the adjudication. On December 2, 1935, the adjudication became confirmed absolutely. The prayer of the present petition is for an amendment to the adjudication, and that the trust be terminated, the proceeds directed to be distributed according to the agreement of the parties, and the schedule of distribution directed in the adjudication be amended accordingly. Ordinarily where a trust fund has been awarded to a trustee, for the purposes of a trust, and it is desired to terminate the trust, the correct procedure is for the trustee to file an account, and have an auditing judge initially pass upon the question. However, in the present case, an account of the whole estate has been so recently filed and audited that we do not deem it necessary to put the parties to the expense and delay of an additional accounting. We shall therefore treat the matter as an application to amend, or open, an adjudication. To this procedure the auditing judge has agreed, and the application was heard by the court in banc.

The obstacle in the way of consummating the agreement of the life tenant and the remainderman as to the

termination of the trust is the existence of valid spend-thrift provisions in both will and codicil. The testator has shielded the life tenant by the spendthrift provisions, and has likewise protected the principal of the trust until it is actually paid over to the remainderman.

A trust may be created for every purpose not unlawful: Spring's Estate, 216 Pa. 529. And in Stoffel's Estate, 295 Pa. 248, the Supreme Court said, at page 251:

"One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty."

No authority need be cited for the legal justification for the creation of a spendthrift trust. The theory for upholding a spendthrift trust is not the concern of the law to keep the donee from dissipating or wasting the res, but to protect the donor's right of property. When a valid spendthrift clause has been created, the law regards the donor as possessing "an individual right of property in the execution of the trust". This principle is enunciated in Morgan's Estate (No. 1), 223 Pa. 228, on page 230, where Mr. Justice Stewart wrote:

"The law rests its protection of what is known as a spendthrift trust fundamentally on the principle of cujus est dare, ejus est disponere. It allows the donor to condition his bounty as suits himself, so long as he violates no law in so doing. When a trust of this kind has been created, the law holds that the donor has an individual right of property in the execution of the trust; and to deprive him of it would be a fraud on his generosity. For the law to appropriate a gift to a person not intended would be an invasion of the donor's private dominion: Holdship v. Patterson, 7 Watts 547. It is always to be remembered that consideration for the beneficiary does not even in the remotest way enter into the policy of the

law; it has regard solely to the rights of the donor. Spendthrift trusts can have no other justification than is to be found in considerations affecting the donor alone. They allow the donor to so control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property. Does the will of this testatrix express direction or purpose that the property given her husband thereunder shall in any and every event be exempt from liability for his debts? If it does, and no rule of property is transgressed in connection therewith, the law will see to it that her wishes and directions are observed."

The existence of a spendthrift clause prevents a merger of a life estate with a legal remainder: Wharton's Estate, 15 D. & C. 175; Moser's Estate, 270 Pa. 217.

One of the latest cases in the Supreme Court where a refusal to terminate a trust was based upon the existence of a spendthrift clause is Rehr v. Fidelity-Philadelphia Trust Co., 310 Pa. 301. The late Mr. Justice Simpson said, at page 304:

"It will be noticed that even plaintiff's life estate is subject to a spendthrift trust, and this we have always held to be sufficient of itself to sustain the trust. Dodson v. Ball, 60 Pa. 492, apparently the sole reliance of plaintiff on this point, itself says at page 496: 'And where the trust is not active the legal estate will remain in the trustee so long as it is necessary to preserve the estate itself, as in the case of a trust for a married woman to protect the estate from her husband; or a trust for a spendthrift son to protect it from his creditors.' A fortiori this is so where, as here, the trust is an active one.

"In Baughman's Est., 281 Pa. 23, 38-40, we reviewed many of our previous decisions, including Dodson v. Ball, and treated of the question now under review at considerable length. We there said (page 39) that such a 'trust cannot be terminated unless there is "no ultimate

purpose of any kind requiring the continuance of the trust" expressed in it, or which "can be implied from its terms, except the mere payment of the income to the cestui que trust". . . . Thus, on a gift of a property to A, upon an active trust for B for life, with remainder to C, B cannot end the trust, without the consent of C, and not even then unless no other legal reason appears for keeping it alive; as, for instance, where the life estate in B is upon a spendthrift trust.' No case has been cited to us, and we know of none, in antagonism to that principle, and we know of a number which support it. In Minnich's Est., 206 Pa. 405, we decided that a will creating an active trust will be sustained, if the income payable to the life tenant is subject to a spendthrift trust, although there is no gift over of the corpus after the death of the life tenant. This was cited in Shower's Est., 211 Pa. 297, 304, and Rockhill's Est., 29 Pa. Superior Ct. 28, 34, and, so far as we are aware, has never been overruled or even qualified. See also Moser's Est., 270 Pa. 217, and King v. York Trust Co., 278 Pa. 141."

The learned counsel for petitioner relies largely upon Eberly's Appeal, 110 Pa. 95, and what was written by Mr. Justice Sterrett therein. But the facts in that case have no possible bearing upon those now before us. All that case decided was that the Act of April 18, 1853, P. L. 503, prohibiting the accumulation of income beyond the minority of the person entitled, applies to spendthrift trusts.

In the light of the foregoing decisions we are not persuaded that the provisions of the Act of April 14, 1931, P. L. 29, have the slightest application to a "spendthrift trust." To decide otherwise would enable beneficiaries, by agreement, to circumvent the plain testamentary provisions of the testator, and destroy the donor's right of property: Morgan's Estate (No. 1), supra; viz., his right to condition his bounty as suits himself. We are unanimously of opinion that this court, even with the

agreement of all parties, is without authority to terminate a trust protected by a spendthrift provision.

But assuming that the act applies to the facts of this case (which we do not concede), Judge Gest points out in Derbyshire's Estate, 16 D. & C. 200, 207, the power of the court is purely discretionary. There can be no question concerning this because the act says the court may decree the trust ended. In our opinion, despite the eloquent plea of petitioner's eminent counsel, we should not so exercise this discretion to terminate the trust. True, the life tenant may presently find herself in dire financial straits, and the receipt of some $71,000 unrestricted money from the $100,000 trust fund would prove most agreeable and convenient at this particular time. It was represented at the argument (confirmed by the allotment of the fund) that petitioner is today a comparatively young woman. When this money is consumed, and life's shadows grow longer, the future may present even worse financial situations than those which at the moment confront her. We would prefer, if it is within our discretion, to permit the fund to remain intact, and petitioner receive an annual sum during the rest of her life, which will reasonably insure to her sufficient funds, legally protected, to enable her to provide ordinary living necessaries. This is probably what testator intended and we see no reason why we should depart from his plain testamentary provisions.

We wish to make some reference to what we deem should be the attitude of a trustee when the parties seek to terminate a trust. If the duties of a trustee cease to be active and become passive, and no duty exists except to deliver the trust res to the beneficiaries, then the trustee, merely because of his right to compensation, has no standing to object to a termination of the trust: Derbyshire's Estate, 306 Pa. 278. But where, as here, there may be a question as to whether or not it was the intent of the testator that the trust should be continued, then we are of the opinion that a duty rests upon the trustee to re-

sist the termination. These remarks are not made by way of criticism against the present trustee, but as a constructive suggestion to all trustees for future guidance.

For the reasons above stated the prayer of the petition is denied.