**Trainer Estate**

*J. Webster Jones*, for exceptant.

*Joseph V. Somers*, contra.

LADNER, J., November 26, 1948.—In this matter John J. Trainer excepted to the ruling in the adjudication of Judge Bolger to the effect that an attachment sur judgment issued in the case of Patrick Gerrity v. John J. Trainer, C. P. No. 6, Sept. term, 1947, no· 2883, was a good attachment against the share due exceptant. The basis of the ruling is that the spendthrift trust provision of the will, by its express language, was effective only until exceptant (a grandchild of testator) reached the age of 25 years.

After argument we felt that before the question raised could properly be decided it was necessary to determine whether the trust for testator's grandchildren violated the rule against perpetuities. Accordingly, by decree of Van Dusen, P. J., dated June 18, 1948, we dismissed the exception pro forma and returned the record to Judge Bolger for consideration of that point.

By supplemental adjudication, reconfirmed nisi October 28, 1948, Judge Bolger decided that the remainders to testator's grandchildren did not offend the rule against perpetuities and the *enjoyment* only of their respective interests was postponed until they arrived at the age of 25. Thereafter, viz., on November 10, 1948, counsel for all parties in interest, with the approval of the auditing judge, filed a written stipulation agreeing that no exceptions would be filed to the supplemental adjudication and that the exception of John J. Trainer (which we had dismissed pro forma) was to be reinstated with the same force and effect as if refiled. It was further agreed that said reinstated ex-

ception might be disposed of by the court en banc without reargument. We therefore proceed now to dispose of the question so raised, viz., whether the auditing judge's ruling upholding the attachment was proper.

The majority of this court agrees that the auditing judge's ruling was correct and we need add but little to what he has so well said in his adjudication.

It may be that a spendthrift trust clause, such as that of paragraph 8 of testator's will, which expressly denies the beneficiary "the right or power in law or equity or otherwise to anticipate the principal of their share prior to the time when I intend they shall receive it either by selling, mortgaging, assigning, securing an advance upon, or otherwise disposing of such share . . ." can be fairly construed to include an attachment by a creditor because an attachment is but an assignment by operation of law. We should not permit a beneficiary to accomplish indirectly what he is forbidden to do directly. And see Hartman's Estate, 31 Pa. Superior Ct. 152 (1906).

However, the real question here is not so much the *extent* of the spendthrift trust, as its *duration*. Testator by paragraph 7, subdivision (4), expressly fixed the duration of the trust for the principal shares payable to his grandchildren (of which John J. Trainer was one) to be "until such children respectively attain the age of 25 years, and when and as each child attains that age, he or she shall be paid his or her equal share of the one-fourth of the principal of my said trust estate and the trust shall cease and determine as to him or her. . . ." This language, in connection with the spendthrift trust provision (par. 8, quoted above), makes clear that testator intended to prohibit anticipation or alienation *only* until the beneficiary attained the age of 25. As pertinently pointed out by the auditing judge, the debt here was not created until after John J. Trainer passed the age of 25, and in this

respect, the instant case differs from Schmidt's Estate, 5 D. & C. 470 (1924), where the attachment had issued *before* the beneficiary arrived at the age fixed for termination of the trust, a fact, we think, that effectually distinguishes it from this case.

It is not important that at the time of the attachent the fund now distributable was not *then* payable to John J. Trainer, because the prior life tenant had not died, for the auditing judge in his supplemental adjudication found, and all parties in interest agree, that testator gave each of his grandchildren a vested remainder in the principal at the age of 25 years. This carried with it all the incidents of property including the right of alienability after the vesting occurred. No doubt testator could have, had he so desired, conditioned his gift or its alienability until the death of each grandchild's parent *or* the arrival at the age of 25, whichever last occurred. This he did not do, nor did he express an intention of so restricting the alienability either.

Nor ought we to infer that testator intended to continue the restraint or alienation until the remainderman's share of the principal was actually *paid* into his hands because he did not, as in Hays' Estate, 201 Pa. 391, (1902), in terms prohibit the payment to anyone other than the beneficiary, and such additional restriction ought not to be implied in face of the period of the duration fixed by testator's express language. Without such a clause mere postponement of enjoyment until a given age would not of itself protect the fund until actually paid to the distributee. This was held in Rowland v. Martin, 230 Pa. 518 (1911).

It has been argued that the direction in paragraph 8 against anticipation of the principal "prior to the time when I intend they shall receive it" implies that the spendthrift trust as to principal continued until it was actually paid over to the remainderman. Stripped from

the context, and standing alone, such might be a possible implication. But these words do not stand alone, for the paragraph reads: "8. I hereby direct that all of the parties under this will for whose benefit a trust is created *and who are not to receive their share of the principal until they attain a certain age,* shall not have the right or power in law or equity or otherwise, to anticipate the principal of their share prior to the time when I intend they shall receive it. . . ." The clause emphasized makes it clear he is merely describing a class rather than extending the period of spendthrift protection. The duration of the trust of which the spendthrift restriction is necessarily a part, is fixed expressly by paragraph 8, clause (4) of the will, which reads:

"To pay the one-fourth of the net income thereof to my son John A. Trainer (exceptant's father), for and during the term of his natural life, and upon his death, whether before or after my decease, to pay the same unto his children, share and share alike, until such children respectively attain the age of 25 years, *and when and as each child attains that age, he or she shall be paid his or her equal share of the one-fourth part of the principal of my said trust estate and the trust shall cease and determine as to him or her,* the issue of any deceased child to take the share that his or her parent would have taken."

Obviously it did not occur to testator that his son might not die before the grandchildren arrived at the age of 25, which was what happened. Consequently he made no provision for that event and we ought to supply none by mere conjecture or implication. In McCurdy v. Bellefonte Trust Co., 292 Pa. 407 (1923) it was pointed out that while under the law of Pennsylvania, spendthrift trusts are not regarded with disfavor, they are not looked upon with such special favor as to warrant the courts raising one by mere implication, and we apprehend neither may we by mere impli-

cation expand the restraint provided by testator nor extend the duration thereof.

The basic fallacy of the dissenting opinion, as we see it, is taking it for granted that testator wanted to protect the share until paid into his grandchild's "own proper hands", whereas all he intended was to guard against possible improvidence until the age of discretion, which he fixed to be 25 years, was reached. It is not without significance that though the will bears the earmarks of a skilled draughtsman, the words and phrases customarily used by attorneys to protect a fund until actually paid to a distributee, are here absent.

We believe the true rule to be that out of deference to testator's right to condition his bounty, it becomes our duty to guard his disposition in accordance with his intent as expressed by the language used, but to the extent only and in the manner he indicated. We are not, however, by strained constructions to expand or extend the protection beyond the limits that his words, fairly construed, require because, as Judge Lamorelle well said in Ritchie's Estate, 24 Dist. 510 (1915), "the terms of an instrument creating a spendthrift trust are not to be strained in such manner as to withhold from persons who are sui juris the incidents of ownership, and incidentally the inseparable incident of alienability where one has an absolute estate." Such, indeed, is the plain teaching of our more recent Pennsylvania cases, such as Hall's Estate, 248 Pa. 218 (1915) ; Keeler's Estate, 334 Pa. 225 (1939) ; Trask v. Shaffer, et al., 140 Pa. Superior Ct. 505, 509, 510 (1940) ; Ritchie's Estate, 24 Dist. R. 510 (1915). And it should be noted that the Restatement of the Law of Trusts, secs. 151 and 153, while upholding spendthrift restrictions as to *income*, declares invalid such restrictions as to *principal* where the beneficiary is entitled to have the principal conveyed to him after a designated period.

The exception is dismissed and the adjudication is now confirmed absolutely.

## Dissenting opinion

HUNTER, J., November 26, 1948.—When a remainderman's interest in the principal of a trust is subject to a spendthrift provision, the purpose of testator can be accomplished only by extending the protection of the trust until the property reaches the hands of the remainderman. If creditors whom testator has barred may come in with their attachments on the day the remainder vests or the trust terminates by the death of life tenant, there can be no payment of the estate to the beneficiary to whom testator has willed it. If the operation of the spendthrift clause is limited to the period during which the remainder is contingent, the remainderman in that period has no power to deal with it, but must await the inevitable day when his creditors will take it from him. Testator by the spendthrift clause of his will has accomplished exactly nothing except to delay the creditors in the collection of their claims.

No distinction can be made between voluntary and involuntary alienation. If it is conceded that the owner of a vested interest may deal with it as his own, then his creditors may reach it, including those whose claims arose before his ownership began: Morgan's Estate (No. 1), 223 Pa. 228.

A vested remainder may be protected by a spendthrift trust: Barker's Estate, 159 Pa. 518, 526; Rockhill's Estate, 29 Pa. Superior Ct. 28; Schmidt's Estate, 5 D. & C. 470; Jacob's Estate, 45 York 17.

An absolute legacy, in which no one but the legatee has an interest, may be protected while in the hands of the executor: Beck's Estate, 133 Pa. 51; Coe's Estate, 146 Pa. 431; Holmesburg Assn. v. Badger, et ux., 144 Pa. Superior Ct. 65.

Testator recites that the remaindermen are not "to receive the principal of their share unless or until they attain a certain age", and directs that they shall not anticipate principal "prior to the time when I intend they shall receive it".

Two events had to occur before the remainderman came into the enjoyment of his estate. The first. mentioned event was the death of life tenant, and the second the attainment of age.

I do not believe that testator used the word "receive" as a reference merely to the time of vesting. Although vesting did take place at the required age, the remaindermen could not "receive" the property until life tenant's subsequent death, and further until an account had been filed by the trustee and actual distribution made. "Receive" must refer to the time of possession and enjoyment; otherwise, the creditor could prevent the property from ever coming into the enjoyment of the legatee.

In my opinion a construction which would restrict the operation of the clause to the period when the remainder was contingent, would destroy the purpose of testator.

Hall's Estate, 248 Pa. 218, is to be distinguished. There income and not principal was subject to the spendthrift provision. The court said (p. 222) :

"The spendthrift clause protecting the income, incidentally protected the corpus during the period of the trust from execution or passing by assignment, Siegwarth's Est., 226 Pa. 591, as there could be no income without the trustee's possession of the corpus. There is nothing in the will or in the codicil which indicates an intention to subject the principal to spendthrift trust."

It is suggested that the case of Rowland v. Martin, 230 Pa. 518, is in point. I do not think so. George W. Moore had a contingent interest in remainder and the

question was whether a spendthrift trust clause affected his interest. Life tenant, Helen Moore, was living. George was over 21 at the date of the deed of trust. It was held that the spendthrift trust "relates only to the estate to be held in trust for that class of issue referred to as being, 'under the age of 21 years at the time of the decease of the said Helen Moore . . .' " and that George's interest in principal was never affected *at any time* (italics supplied) by the spendthrift provision. That is to say, the contingency upon which his share was to be affected by a spendthrift trust did not occur.

I would sustain the exceptions.

Van Dusen, P. J., joins in this dissent.